LAW OFFICES KENNETH M. STERN
btmncrt@earthlink.net
5850 Canoga Avenue, Ste. 400
Woodland Hills, California 91367
(818) 716-1101
(Cal. Bar No. 82975)

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF THELMA STERN, | ) CASE NO. 2:14-CV-5155 |
| | ) |
| | ) SECOND AMENDED |
| | ) COMPLAINT |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| TUSCAN RETREAT, INC., STEVEN | ) |
| KRIVITSKY, TATYANA KRIVITSKY, | ) |
| STEPHEN WEISBARTH, SUSAN | ) |
| WEISBARTH, LONGWOOD | ) |
| MANAGEMENT CORPORATION, | ) |
| WOODLAND HILLS RETIREMENT | ) |
| CENTER, INC., WOODLAND PARK | ) |
| INVESTMENT CO., LLC, AND | ) |
| DOES 1 THROUGH 10  INCLUSIVE, | ) |

SECOND AMENDED COMPLAINT

1

1 |        Defendants.                      )

    1. This case contains a cause of action based upon a violation of 29 U.S.C. 794. As such, this Court has federal jurisdiction pursuant to 28 U.S.C. 1331 and 1343. This Court has pendent jurisdiction, as the California claims, pursuant to 28 U.S.C. 1367. Venue is proper, pursuant to 28 U.S.C. 1391, as, all acts occurred, plaintiff resided in, and defendants reside in, and all acts alleged took place withing this District.

    1.1 Thelma Stern at all times herein mentioned was, a resident of Los Angeles County, California. At all times herein mentioned Thelma Stern was a lessee and tenant of defendant senior assisted living homes, Residential Care for the Elderly (RCFE), Woodland Park Retirement Hotel, Park Ventura Retirement Hotel, and their owners, being the lessee of room, unless otherwise stated, 102. She moved into Woodland Park Retirement Hotel on February 1, 2001 and moved into room 102 approximately a year or two later. Thelma Stern died on January 6, 2014 in the County of Los Angeles. Kenneth M. Stern, is the executor of Thelma Stern's estate, and guardian ad litem. Thelma Stern was also a subtenant of Woodland Park Investment Co., LLC. Thelma Stern's first rental agreement, at

---

SECOND AMENDED COMPLAINT

Woodland Park Retirement Hotel was between Longwood Management Corporation, (d.b.a. Woodland Park Retirement Hotel) Henry Stern, and, Thelma Stern, with Henry Stern signing for himself and Thelma Stern.  The rental agreement was signed, by y Susan Weisbarth, on behalf of Longwood Management Corporation.  The rental agreement is dated February 1, 2001.  On March 30, 2003 Henry Stern signed a lease agreement, as representative of Thelma Stern, with Woodland Park Retirement Hotel, signed by said RCFE by Amy Hogue.  On September 1, 2007, Kenneth Stern signed a lease agreement, on behalf of Thelma Stern, with Woodland Park Retirement Hotel.  Plaintiff, nor her representative Kenneth Stern, received a copy of the lease signed by Woodland Park Retirement Hotel.  However, Kenneth Stern did receive some documents, related to said lease, signed by Susan Weisbarth, on behalf of Woodland Park Retirement Hotel.  On September 1, 2007, Kenneth Stern signed a lease agreement, on behalf of Thelma Stern, with Park Ventura Retirement [Hotel].  Plaintiff, nor her representative Kenneth Stern, received a copy of the lease signed by Park Ventura Retirement [Hotel] or Tuscan Retreat, Inc..  However, Susan Weisbarth did sign the striking out of a portion of said agreement.  Said agreement

SECOND AMENDED COMPLAINT

3

recognizes that Park Ventura Retirement [Hotel] received SSI and SSP funds.

Thelma Stern moved out of Park Venture Retirement Hotel on April 30, 2010.

2. Defendant Steven Krivitsky is, and at all times herein mentioned was, a resident of Los Angeles County, California.  He is sued only for conduct from January 1, 2007.  From approximately January, 2007 though the present he was one of the management personnel responsible for the management of Woodland Park Retirement Hotel and  Park Ventura Retirement Hotel, which was managed and operated by Tuscan Retreat, Inc., among others, and was an officer, director and shareholder of Tuscan Retreat, Inc.  He exercised substantial independent authority and judgment, from approximately July 1, 2007 to present,  in Tuscan Retreat, Inc.'s decisions such that his decisions ultimately determined corporate policy, for said corporation, as related to the acts and omission alleged herein, in that, he exercised substantial independent authority and judgment in corporate decision making.  His management duties included investigating resident complaints, meeting with the Department of Social Services regarding resident and Department of Social Services complaints, making sure residents were properly cared for, participation in determining budgets and staff scheduling, including how

SECOND AMENDED COMPLAINT

4

1   many care givers would be available, during the evening, to assist residents,  and

2   participation in hiring, firing and disciplining employees, including Susan

3   Weisbarth, Stephen Weisbarth, Esperanza Torres, Melba and Douglas, and was

4   involved in managership all of the operations at said RCFEs .  As such, he was at

5   all times, during the aforesaid time period, herein responsible for the staffing of

6   care givers at Woodland Park Retirement Hotel and Park Ventura Retirement

7   Hotel and responsible for all care giver and other employees of Woodland Park

8   Retirement Hotel and Park Ventura Retirement Hotel.  He was also, during said

9   time period, responsible for correcting problems specified by family members of

10  persons who were residents of Woodland Park Retirement Hotel and Park Ventura

11  Retirement Hotel.  At said times mentioned, herein, he was responsible for Thelma

12  Stern's care.  During said time it is believed he was also one of the owners, as a

13  shareholder of Ruchel Enterprises, and one of the management personnel

14  responsible for the management of California Villa of Van Nuys, owned by

15  Ruchel Enterprises,  and was an officer, director and shareholder of Ruchel

16  Enterprises, was one of the ostensible owners of California Villa of Van Nuys.  As

17  such, he was at all times, during the aforesaid time period, herein responsible for

SECOND AMENDED COMPLAINT

5

the staffing of care givers at California Villa of Van Nuys and responsible for all care giver and other employees of California Villa of Van Nuys.  He was also, during said time period, responsible for correcting problems specified by family members of persons who were residents of California Villa of Van Nuys.  Plaintiff believes that despite Steven Krivitsky's, knowing that Stephen Weisbarth had little or no experience at working at a RCFE hired Stephen Weisbarth to be the administrator at California Villa of Van Nuys, then, Executive Director/assistant administrator Park Ventura Retirement Hotel.  Further, Steven Krivitsky, with knowledge of wrongful acts, by Stephen Weisbarth, as alleged herein, did not discipline or terminate Stephen Weisbarth's employment.  Further, Steven Krivitsky had knowledge, of Susan Weisbarth's alleged wrongful conduct towards members of the Kayle family, and, hired and retained, as an employee, Susan Weisbarth as an employee of Tuscan Retreat, Inc.  Steven Krivitsky is sued herein, only for acts and omissions occurring on or after July 1, 2007.

3.  Defendant Tatyana Krivitsky, is, and at all times herein mentioned was, a resident of Los Angeles County, California.  She is sued only for conduct from January 1, 2007 From approximately January, 2007 though  she was one of owners

SECOND AMENDED COMPLAINT

6

of and one of the management personnel responsible for the management of

Woodland Park Retirement Hotel and Park Ventura Retirement Hotel and was an

officer, director and shareholder of Tuscan Retreat, Inc. She exercised substantial

independent authority and judgment, from approximately July 1, 2007 to present,

in her company decisions such that his decisions ultimately determined corporate

policy as related to the acts and omission alleged herein, in that, she exercised

substantial independent authority and judgment in corporate decision making.  Her

management duties included investigating resident complaints, meeting with the

Department of Social Services regarding resident and Department of Social

Services complaints, making sure residents were properly cared for,  participation

in determining budgets and staff scheduling, including how many care givers

would be available, during the evening, to assist residents, participation hiring,

firing and disciplining employees including Susan Weisbarth, Stephen Weisbarth,

Esperanza Torres, Melba and Douglas. and was involved in managership all of the

operations at said RCFEs  As such, she was at all times, during the aforesaid time

period, herein responsible for the staffing of care givers at Woodland Park

Retirement Hotel and Park Ventura Retirement Hotel and responsible for all care

SECOND AMENDED COMPLAINT

giver and other employees of Woodland Park Retirement Hotel and Park Ventura Retirement Hotel.    She was also, during said time period, responsible for correcting problems specified by family members of persons who were residents of Woodland Park Retirement Hotel and Park Ventura Retirement Hotel.  At said times mentioned, herein, she was responsible for Thelma Stern's care.  During said time she was also believed to be one of the owners of and one of the management personnel responsible for the management of California Villa of Van Nuys, owned by Ruchel Enterprises, Inc. and was an officer, director and shareholder of Ruchel Enterprises, one of the ostensible owners of California Villa of Van Nuys.  As such, she was at all times, during the aforesaid time period, herein responsible for the staffing of care givers at California Villa of Van Nuys and responsible for all care giver and other employees of California Villa of Van Nuys.  She was also, during said time period, responsible for correcting problems specified by family members of persons who were residents of California Villa of Van Nuys.  Further, Tatyana Krivitsky, with knowledge of wrongful acts, by Stephen Weisbarth, as alleged herein, did not discipline or terminate Stephen Weisbarth's employment. Further, Tatyana Krivitsky had knowledge, of Susan Weisbarth's alleged wrongful

SECOND AMENDED COMPLAINT

conduct towards members of the Kayle family, and, hired and retained, as an employee, Susan Weisbarth as an employee of Tuscan Retreat, Inc.  Tatyana Krivitsky is sued herein, only for acts and omissions occurring on or after July 1, 2007.

4. Defendant Stephen Weisbarth is, and at all times herein mentioned was, a resident of Los Angeles County, California.  He is sued for conduct only from July 1, 2009.  From approximately sometime between July 1, 2009 through September 10, 2009 through, at minimum December 31, 2010 he was one of the management personnel responsible for the management of Park Ventura Retirement Hotel, being the Executive Director, assistant administrator and in the de facto administrator, and manager, having taken over the position of his wife, Susan Weisbarth, who had previously been the administrator at Woodland Park Retirement Hotel and Park Ventura Retirement Hotel.  During said time period, he exercised substantial independent authority and judgment, from approximately July 1, 2007 through, at minimum, 2010, in his company decisions such that his decisions ultimately determined corporate policy as related to the acts and omission alleged herein, in that, he exercised substantial independent authority

SECOND AMENDED COMPLAINT

9

and judgment in corporate decision making.   His management duties included investigating resident complaints, meeting with the Department of Social Services regarding resident and Department of Social Services complaints, making sure residents were properly cared for, participation in determining budgets and staff scheduling, including how many care givers would be available, during the evening, to assist residents, participation hiring, firing and disciplining employees and was involved in managership all of the operations at said RCFEs.  At some point in time, in September 2009, or shortly thereafter, Steven Krivitsky told Kenneth M. Stern if there were any problems with Thelma Stern's care, or she needed anything, in that regard, Kenneth M. Stern should speak to Stephen Weisbarth, about such.   As such, he was at all times, during the aforesaid time period, herein responsible for the staffing of care givers at Park Ventura Retirement Hotel and responsible for all care giver and other employees of Park Ventura Retirement Hotel.    He was also, during said time period, responsible for correcting problems specified by family members of persons who were residents of Park Ventura Retirement Hotel. At said times mentioned, herein, he was responsible for Thelma Stern's care.  He also was not qualified for said position,

SECOND AMENDED COMPLAINT

as he did not have adequate training and background for said position.  This is

reflected, in part, in that, prior to July, 2009,  he had been placed as administrator,

at California Villa of Van Nuys, by Ruchel Enterprises, Steven Krivitsy, Tatyana

Krivitsky, Tuscan Retreat, Inc. and Longwood Management Inc,. and were

informed by the California Department of Social Services, that he was not

qualified to be a Residential Care Facility for the Elderly administrator, which

resulted in his being transferred to Park Ventura Retirement Hotel.  Prior to his

commencement of working at California Villa of Van Nuys, he had no experience

at working at an RCFE.  Previous to such, he was a salesman.  His employment, at

Park Ventura Retirement Hotel, ended approximately August, 2011.  He has stated

that part of the reason that he terminated his employment because the owners of

Park Ventura Retirement Hotel, that is Tatyana Krivitsky and Steven Krivitsky,

"had a lack of integrity."  Such a lack of integrity is consistent with the allegations

against said Krivitsky, and their business, Park Ventura Retirement Hotel, all of

which demonstrate a lack of integrity.  On or about March 5, 2010, in the face of

Kenneth M. Stern's repeated complaints about the care of Thelma Stern, at Park

Ventura Retirement Hotel, Stephen Weisbarth stated there were no problems with

SECOND AMENDED COMPLAINT

11

the care Thelma Stern was receiving at Park Ventura Retirement Hotel, that Kenneth Stern had no experience running a RCFE and that Kenneth M. Stern was a troublemaker for complaining about the care of Thelma Stern.  In or about August or September, 2009 Susan Weisbarth knew Kenneth M. Stern was going to have hip replacement surgery in October, 2009.  In the face of Kenneth M. Stern's complaints, in August and September, 2009, to Susan Weisbarth, concerning neglect and inadequate care, at Park Ventura Retirement Hotel, Susan Weisbarth stated to Kenneth M. Stern, on September 11, 2009 that there were no problems with the care at Park Ventura Retirement Hotel; and, Kenneth M. Stern was only making complaints because he was under the stress of the impending hip replacement surgery.  Steven Weisbarth is sued herein, only for acts and omissions occurring on or after July 1, 2009.

    5.   Defendant Susan Weisbarth is, and at  times herein mentioned was, a resident of  Los Angeles County, California.   She is sued only for conduct through September 10, 2009. At times herein mentioned, she was one of  was one of the management personnel responsible for the management of Woodland Park Retirement Hotel and Park Ventura Retirement Hotel.   As such, she at times

---

SECOND AMENDED COMPLAINT

herein, was responsible for the staffing of care givers at Woodland Park Retirement Hotel and Park Ventura Retirement Hotel and responsible for all care giver and other employees of Woodland Park Retirement Hotel Park Ventura Retirement Hotel.  She exercised substantial independent authority and judgment, from approximately February 1, 2001 through approximately, at minimum, September, 2009,  in her company decisions such that his decisions ultimately determined corporate policy as related to the acts and omission alleged herein in that, he exercised substantial independent authority and judgment in corporate decision making.  From before February 1, 2001 to what is believed to be sometime after September 11, 2009, Susan Weisbarth was the administrator at Woodland Park Retirement Hotel, then Park Ventura Retirement Hotel, the position of administrator being that management personnel officially recognized by the Department of Social Services as being the person in charge of the operation and management of the RCFE.  Thereafter it is believed she continued to be an employee of Tuscan Retreat, Inc., and remained an advisor and consultant at Park Ventura Retirement Hotel.   Her management duties included investigating resident complaints, meeting with the Department of Social Services regarding

SECOND AMENDED COMPLAINT

13

resident and Department of Social Services complaints, making sure residents were properly cared for,  participation in determining budgets and staff scheduling, including how many care givers would be available, during the evening, to assist residents, participation hiring, firing and disciplining employees and was involved in managership all of the operations at said RCFEs.   She was also, during said time period, responsible for correcting problems specified by family members of persons who were residents of Park Ventura Retirement Hotel. At said times mentioned, herein, she was responsible for Thelma Stern's care.  She was the administrator at Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, until she was transferred to California Villa of Van Nuys, in approximately July, 2009.  Despite said transfer, Susan Weisbarth continued to be employed, as an advisor and as part of the management team, at Park Ventura Retirement Hotel, though and including, at minimum, May, 2010.  In or about August or September, 2009 Susan Weisbarth knew Kenneth M. Stern was going to have hip replacement surgery in October, 2009.  In the face of Kenneth M. Stern's complaints, in August and September, 2009, to Susan Weisbarth, concerning neglect and inadequate care, at Park Ventura Retirement Hotel, Susan Weisbarth

SECOND AMENDED COMPLAINT

14

stated to Kenneth M. Stern, on September 11, 2009 that there were no problems with the care at Park Ventura Retirement Hotel; and, Kenneth M. Stern was only making complaints because he was under the stress of the impending hip replacement surgery.  Susan Weisbarth is sued herein, only for acts and omissions occurring through and including September 10, 2009.

6. Defendant Longwood Management Corporation, is, and at all times herein mentioned was, a corporation incorporated in the State of California, and doing business in Los Angeles County, California.  It is sued for all conduct herein, as is Woodland Hills Retirement Center Inc. and Woodland Park Investment Co, LLC.  Longwood Management Corporation is a family owned business of Jacob Friedman and Leah Friedman,  and their sons, Ira David Friedman and Aaron Friedman, which owns and operates nursing care facilities, assisted living homes and hospice care, individually and through the Friedman Family Trust.  Although Longwood Management Corporation and the Friedman's have split the operation of their family business, into various companies, said family business is all operated, managed, and controlled, by Longwood Management Corporation, as if, as a practical matter, there was only one entity,

SECOND AMENDED COMPLAINT

15

being Longwood Management Corporation.  At all times herein mentioned, it was an owner of, and responsible for the management of its affiliate Woodland Hills Retirement Center, Inc., a dissolved corporation, Woodland Park Retirement Hotel and Park Ventura Retirement Hotel.  Longwood Management Corporation had a management agreement whereby it would provide management services to Woodland Hills Retirement Center, Inc.  The monthly management fee paid from Woodland Hills Retirement Center, Inc. To Longwood Management Company was virtually the entire monthly net profit for  Woodland Hills Retirement Center, Inc. Furthermore, Woodland Hills Retirement Center, Inc. paid Woodland Park Investment Co., LLC approximately $25,000.00 per month in rent.    Woodland Park Retirement Hotel was the fictitious name d.b.a. for Woodland Hills Retirement Center, Inc.; and, as a matter of practice, Woodland Park Retirement Hotel is also a fictitious named d.b.a. for Longwood Management Corporation. Also Longwood Management Corporation, and the Friedmans, including the Friedman Family Trust, are believed to have been owners, operators and managers of Ruchel, Enterprises.  Woodland Park Retirement Center, Inc., and Longwood Management Corporation's affiliate Woodland Park Investment Company, L.L.C.

SECOND AMENDED COMPLAINT

are believed, to be a dummy/shell corporation and limited liability company, for Longwood Management Corporation, with Longwood Management Corporation, bypassing Woodland Hills Retirement Center, Inc., and thereby managing and operating Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, for the purpose of funneling profits to the Friedman family.  Furthermore, Longwood Management Corporation is, or has been, the beneficial owner of approximately 32 skilled nursing facilities, two to five Residential Care Facilities for the Elderly, including Woodland Park Retirement Hotel and California Villa of Van Nuys, owned by Ruchel Enterprises, and at least one hospice care location. At each, Longwood Management Corporation sets up a dummy company, similar to that of Woodland Hills Retirement Center, Inc., to be the governmentally licenced company and ostensible owner and operator of each said facility, and enters into a management agreement, with each said facility, and circumvents and ignores the dummy company, with Longwood Management Corporation being the actual manager and operator of each location.  Ira David Friedman references himself as the Senior Vice President of Longwood Management Company, out of respect for his father, Jacob Friedman, who founded Longwood Management

SECOND AMENDED COMPLAINT

17

Company; although, he has in documents also designated himself as President of said company.  In truth and fact, Ira David Friedman is the President of Longwood Management Company.  Ira David Friedman has stated that he, as senior vice president of Longwood Management Corporation, and Longwood Management Corporation's regional director, Kevin Brusco, are the persons who hire the administrators at said facilities.  Furthermore, Ira David Friedman has indicated, in his role as senior vice president, he is responsible for making sure the facilities are staffed and successfully run.  Also, Randy Adler, the Chief Financial Officer for Longwood Management Corporation, in his position as such, prepares the budgets for the facilities and controls the finances of each of the facilities.  He also maintains, as an employee of Longwoood Management Company,  Ruchel Enterprises records.  The administrator at each Longwood Management Corporation affiliated company RCFE or nursing home,  reports directly to the regional director of Longwood Management Corporation.  Woodland Hills Retirement Center, Inc. was the licensee, licensed by the California Department of Social Services, at all times herein, up to and including January 22, 2008.  Woodland Park Investment Company, L.L.C., is an owner of the real and personal

SECOND AMENDED COMPLAINT

18

property located at 21200 Ventura Blvd. Woodland Hills, Ca.  Longwood

Management Corporation, at each of its skilled nursing facilities, RCFE, and

hospice care facility set up a dummy company to be the legal owner of the real

property at said entity, when in fact, Longwood Management Corporation is the

actual beneficial owner.  This is further reflected in the fact that said property

owners are managed by Ira David Friedman, in his capacity as senior vice

president of Longwood Management Inc., who has acknowledged the properties

are in actuality owned by Longwood Management Corporation.  Also, it is

Longwood Management Corporation employees who make the repairs and capital

improvements.   He is also responsible, in his capacity as senior vice president for

Longwood Management Corporation, to make sure the properties are kept in

repair.    According to Steven Krivitsky, Longwood Management Company is also

the owner of said real property.   Longwood Management Corporation has,

disregarded its own corporate entity distinction, by doing business, at Woodland

Park Retirement Hotel, indiscriminately in the names of Woodland Park

Retirement Hotel, Park Ventura Retirement Hotel, Woodland Hills Retirement

Center, Inc. and Woodland Park Investment Company, L.L.C. and causing third

SECOND AMENDED COMPLAINT

persons to believe that the activities, at Woodland Park Retirement Hotel, were in fact managed, operated, owned and conducted by Longwood Management Corporation.  Ruchel Enterprises, Inc. Has been a subsidiary and affiliate of Longwood Management Corporation and has been partially owned by both the Longwood Management Corporation, and Tatyana Krivitsky and Steven Krivitsky and Edvard Krivitsky, Tatyana Krivitsky's husband.  Ruchel Enterprises is named after Jacob Friedman and Leah Friedman's daughter, and Ira David Friedman and Aaron Friedman's sister, Ruchel (nee) Friedman.  Ruchel Enterprises, and thus its parent company Longwood Management Corporation, share employees at California Villa of Van Nuys, and Park Ventura Retirement Hotel, including Stephen Weisbarth and Susan Weisbarth, a blond, pony tailed bus driver, whose first name is believed to be Pat or Pam, and care givers, with Ruchel Enterprises Inc being a general employer of Stephen Weisbarth and Susan Weisbarth, said bus driver and care givers and Tuscan Retreat, Inc. being the special employer of Stephen Weisbarth and Susan Weisbarth, said bus driver and care givers.   Henry Stern, signed purported admission agreements (leases) with Longwood Management Company, on, or about, February 1, 2001.   Thelma Stern, through

SECOND AMENDED COMPLAINT

20

her representatives, signed purported admission agreements (leases) with

Woodland Park Retirement Hotel on, or about, March 28, 2003 and September 1,

2007 and with Park Ventura Retirement on September 1, 2008.  Thelma Stern has

not been provided with copies, signed by defendants of the September 1, 2007 and

September 1, 2008 purported admission agreements, which constituted a violation

of Health and Safety Code section 1569.887 [c] and copies of said purported

admission agreements were never delivered, to Thelma Stern.  Woodland Hills

Retirement Center, Inc., Woodland Park Investment Company, L.L.C. and Ruchel

Enterprises are operated, managed, owned and controlled by the Friedman family,

and in particular, Jacob Friedman, Ira David Friedman and Aaron Friedman.

Longwood Management Company, and all the referenced related companies, are

jointly operated and managed by Ira David Friedman and Aaron Friedman, who

answer to no one, concerning Woodland Hills Retirement Center, Inc., and

Woodland Park Investment Company, L.L.C. management, control and operation.

It would be inequitable for these Longwood Management Corporation, Woodland

Hills Retirement Center, Inc., and Woodland Park Investment Company, L.L.C., to

try and avoid liability for abusing and neglecting the aged, the infirm and the

SECOND AMENDED COMPLAINT

21

disabled persons, whom are entrusted to their care, by setting up these various

entities, , to try and avoid liability, when in fact, as a practical matter, they are but

one entity, particularly as Woodland Hills Retirement Center, Inc. is now a

dissolved corporation.  Woodland Hills Retirement Center, Inc. was dissolved on

January 31, 2013,  although as of the end of January, 2008, they were no longer

the RCFE licensee at 21200 Ventura Blvd. Woodland Hills, Ca.  Pursuant to

California Corporation Code section 2011, The Friedman Family Trust, Ira David

Friedman , Aaron Friedman, Jacob Friedman, Leah Friedman, Ruchel (Nee)

Friedman, Tzippy (Nee) Friedman, or Libby (Nee) Friedman who are believed to

be shareholders of Woodland Hills Retirement Center, Inc., are hereby sued in

Woodland Hills Retirement Center, Inc.'s name, to the extent that the assets of

said corporation has been distributed to said shareholders.

      7. Defendant Tuscan Retreat, Inc., is, and at all times herein mentioned was,

a corporation incorporated in the State of California, and doing business in Los

Angeles County, California.  It is sued only for conduct from January 1, 2007.

Said corporation was underfunded, in that, they were unable to provide adequate

funding for their business, Park Ventura Retirement Hotel, being a senior assisted

SECOND AMENDED COMPLAINT

living home, and in particular, were unable to adequately fund the necessary

amount of caregivers required to take care of the elder and disabled persons living

at their business establishment, called Park Ventura Retirement Hotel.

Furthermore, Tuscan Retreat Inc. has engaged in a pattern of not paying its debts.

Furthermore it allowed its employees to work at California Villa of Van Nuys, in

which Tuscan Retreat, Inc. is believed to have not interest; however, is owned,

operated and managed by Steven Krivitsky and Tatyana Krivitsky, reflecting that

fact that said Krivitsky view, and treat, the employees of Tuscan Retreat, Inc. as

the personal employees of said Krivitskys.  Tuscan Retreat, Inc./Park Ventura

Retirement (Hotel) received its license, to operate the RCFE, at 21200 Ventura

Blvd., Woodland Hills, Ca. on January 23, 2008.  The known officers, directors

and shareholders of Tuscan Retreat, Inc. are Steven Krivitsky and Tatyana

Krivitsky.  It is believed that they disregard corporate formalities, treating it as if it

were not a corporation, in that, they have had their employees work at California

Villa of Van Nuys, owned by Ruchel Enterprises, of which said Krivitsky's are

also officers, directors and shareholders, and manage California Villa of Van

Nuys, although Tucsan Retreat, Inc. is not believed to be an owner, shareholder,

SECOND AMENDED COMPLAINT

23

director or manager of  California Villa of Van Nuys as aforesaid.  Park Ventura Retirement Hotel, and Tuscan Retreat, Inc., affected commerce, in that, it purchased goods, and services, for the operation of the business, made monetary payments to employees,  collected funds from residents in the form of rent and services payments, and used federal banking institutions.  It was a place of  a place of lodging.  It also served food and drink, in that, it provided residents with meals and snacks.  It also was a place of entertainment, in that, it provided bingo, singers, sing alongs, movies, lectures and other participatory activities for its residents and their guests.  It also maintained a store where residents could purchase sundries and food goods.  It was also a service establishment, in that, they provide care givers to help residents with their personal needs such as personal cleaning and showering, help in administering medications, help in changing persons diapers, help in getting persons in and out of their wheelchairs and beds, cleaning residents rooms, doing residents laundry and providing services of podiatrists, transportation to doctors appointment, hair dressers and nail care.  It also provided for exercise activity.  At times mentioned, herein, said defendants were responsible for Thelma Stern's care.

SECOND AMENDED COMPLAINT

24

8. Woodland Park Retirement Hotel, was at all times herein mentioned was, an assisted living home, which was owned, operated and managed by Longwood Management Corporation, Woodland Park Investment Company, L.L.C. At all time relevant, employees at Woodland Park Retirement Hotel, and Longwood Management Corporation itself, represented themselves to be the owners, operators and managers of Woodland Park Retirement Hotel. Woodland Hills Retirement Center, Inc. and after approximately July 1, 2007, until the name was changed to Park Ventura Retirement Hotel, by Tuscan Retreat, Inc. with Longwood Management Company being the beneficial owner, and doing business in Los Angeles County, California. Woodland Park Retirement Hotel, and he aforesaid companies named in this paragraph, affected commerce, in that, it purchased goods, and services, for the operation of the business, made monetary payments to employees, collected funds from residents in the form of rent and services payments, and used federal banking institutions. It was a place of a place of lodging. It also served food and drink, in that, it provided residents with meals and snacks. It also was a place of entertainment, in that, it provided bingo, singers, sing alongs, movies, lectures and other participatory activities for its

SECOND AMENDED COMPLAINT

25

residents and their guests.  It also maintained a store where residents could purchase sundries and food goods.  It was also a service establishment, in that, they provide care givers to help residents with their personal needs such as personal cleaning and showering, help in administering medications, help in changing persons diapers, help in getting persons in and out of their wheelchairs and beds, cleaning residents rooms, doing residents laundry and providing services of podiatrists, transportation to doctors appointment, hair dressers and nail care.  It also provided for exercise activity.  At times mentioned, herein, said defendants were responsible for Thelma Stern's care.  Further, Woodland Hills Retirement Center, Inc., was the licensee for the RCFE located at 21200 Ventura Blvd., Woodland Hills, Ca. from, at minimum, January 1, 2001 through and including January 22, 2008.

9.  It is unclear whether there was ever any formal sale of the RCFE at 21200 Ventura Blvd, Woodland Hills, Ca. 91364 from Woodland Hills Retirement Center, Inc. to Tuscan Retreat, Inc.  Woodland Hills Retirement Center, Inc. never served written notice, as required by law, on the residents, or their legal representatives, living at the RCFE at 21200 Ventura Blvd., Woodland Hills, Ca.

SECOND AMENDED COMPLAINT

26

91364.  As such, there could be no lawful sale of said RCFE from Woodland Hills Retirement Center, Inc. to Tuscan Retreat, Inc.  However, said companies have held out, to the public that there was, at least in part, such a sale.  As such Woodland Hills Retirement Center, Inc., at all times mentioned herein, remained an owner of the RCFE known as Park Ventura Retirement Hotel, regardless of whether that ownership was actual legal, beneficial or ostensible.  So too, Tuscan Retreat, Inc. was an owner of the RCFE known as Park Ventura Retirement Hotel regardless of whether that ownership was actual legal, beneficial or ostensible.

10.  Park Ventura Retirement Hotel is, and at all times herein mentioned was, an assisted living home, and a d.b.a. of Tuscan Retreat, Inc., and doing business in Los Angeles County, California. which was formerly named Woodland Park Retirement Hotel and was owned and/or operated by Tuscan Retreat, Inc. and whose beneficial ownership was Steven Krivitsky, Tatyana Krivitsky, Longwood Management Woodland Park Investment Company, L.L.C. Woodland Hills Retirement Center, Inc. Park Ventura Retirement Hotel affects commerce, in that, it purchases goods, and services, for the operation of the business, makes monetary payments to employees,  collects funds from residents in the form of rent

SECOND AMENDED COMPLAINT

27

and services payments, and uses federal banking institutions.  It is a place of  a

place of lodging.  It also serves food and drink, in that, it provides residents with

meals and snacks.  It also is a place of entertainment, in that, it provides bingo,

singers, sing alongs, movies, lectures and other participatory activities for its

residents and their guests.  It also maintains a store where residents can purchase

sundries and food goods.  It is also a service establishment, in that, it provides care

givers to help residents with their personal needs such as personal cleaning and

showering, help in administering medications, help in changing persons diapers,

help in getting persons in and out of their wheelchairs and beds, cleaning residents

rooms, doing residents laundry and providing services of podiatrists,

transportation to doctors appointment, hair dressers and nail care.  It also provides

for exercise activity.  Plaintiff is informed and believes that Tuscan Retreat, Inc.

and the Krivitskys are a consolidated enterprise with Longwood Management,

who has, in part, through its subsidiaries and affiliated companies, Ruchel

Enterprises, Woodland Hills Retirement Center, Inc. and/or Woodland Park

Investment Company, Ira David Friedmand, Aaron Friedmand, Jacob Friedman,

Leah Friedman and the Friedman Family trust remained beneficial owners, and

SECOND AMENDED COMPLAINT

28

managers, of Park Ventura Retirement Hotel, and was operated and managed by

Longwood Management Corporations, with said company being the beneficial

owner.  In that regard Longwood Management Corporations subsidiaries and

affiliates have shared and used the same employees as Tuscan Retreat, Inc./Park

Ventura Retirement Hotel, and have shared their officers and shareholders with

Longwood Management Corporation's subsidiary, Ruchel Enterprises; and, have

so integrated their operations with Woodland Hills Retirement Center, Inc.,

Woodland Park Investment Company, L.L.C., Tuscan Retreat, Inc. and its known

owners, directors and officer, Steven Krivitsky and Tatyana Krivitsky, that they

are one enterprise, which, as a routine part of its business operation, is to abuse

helpless, elderly and disabled persons, who are unable to protect themselves

against defendants' abuses, and, uses various subsidiaries and affiliated

companies, in order to attempt to avoid and limit liability for such abuses. Further,

Woodland Hills Retirement Center, Inc. and Woodland Park Investment Company,

L.L.C., in a lease with Tuscan Retreat, Inc., dated January 1, 2007, maintained

control over Tuscan Retreat, Inc.'s operation of Park Ventura Retirement Hotel by

(1) continuing to administer the Woodland Park Retirement Hotel/Park Ventura

SECOND AMENDED COMPLAINT

1  Retirement Hotel, while Tuscan Retreat, Inc. was in the process of obtaining its

2  license, for the location, (2) maintaining ownership of the real and personal

3  property, of the premises, (3) requiring a violation of the law, telling the tenant it

4  will run the facility as an unlicensed RCFE (4) requiring tenant to comply with all

5  laws relating to RCFE's, (5) requiring tenant to pay all payroll, when due, and file

6  all required governmental reports, when due (6) ensure that the facility has proper

7  food, drugs and supplies, for the facility, (7) requiring tenant to notify landlord

8  any time a governmental agency inspects the premises. (8) to require landlord's

9  permission before any person may become a subtenant or otherwise occupy any

10  portion of the premises, which would include the elder and disabled residents

11  therein,  (9) requiring tenant to have at least 70 per cent of the facility occupied by

12  residents, during and  at the termination of the lease, and includes the requirement

13  that tenant provide landlord with information, as landlord demands, information

14  regarding the residents (10) designating any action which places tenant's license

15  in jeopardy of suspension, [which Park Ventura Retirement/Tuscan Retreat has

16  done by being placed on probation by the Department of Social Services] and (11)

17  requiring tenant to maintain all residents charts and records.  Also, Woodland Park

SECOND AMENDED COMPLAINT

30

Investment Co., LLC ratified all wrongful conduct, as alleged herein, of Tuscan Retreat, Inc., in that, Woodland Park Investment Co., LLC, with knowledge of Tuscan Retreat wrongful conduct alleged herein,  renewed Tuscan Retreat, Inc. lease, as said RCFE; although, Woodland Park Investment Co., Inc. had the authority to, terminate said lease.  At times mentioned, herein, said defendants were responsible for Thelma Stern's care.

11.  Plaintiff is ignorant of the true identities and/or capacities, and/or the full factual involvement of,  defendants named herein as DOES 1 through 10, inclusive and for that reason sues those defendants by such fictitious names. Plaintiff believes, and thereon alleges, said fictitiously named defendants are in some manner and to some extent liable for the injuries alleged in this Complaint. Plaintiff will amend this Complaint to allege the true identities,  capacities, and involvement of these fictitiously named defendants when such is ascertained.

12.  Tuscan Retreat, Inc.'s collections of rent, at Park Ventura Retirement Hotel, including Thelma Stern's rent was done on behalf of Woodland Park Investment Company, L.L.C., as Thelma Stern's master landlord, and was a conduit for which Tuscan Retreat, Inc. acted as a conduit between itself, and

SECOND AMENDED COMPLAINT

Thelma Stern, for the payment of rent to, and for Woodland Park Investment Company's benefit, in that, if Tuscan Retreat, Inc. did not collect rents, at Park Ventura Retirement Hotel, including Thelma Stern's rent, Tuscan Retreat, Inc. would not be able to pay it rent to Woodland Park Investment Co., L.L.C.  As such, any wrongful acts, committed by Tuscan Retreat, Inc., were the acts of, and ratified by, Woodland Park Retirement, Inc.

12a.   Furthermore, there is a master lease agreement, dated July 1, 2007 between, Woodland Park Investment Co. L.L.C. and Tuscan Retreat, Inc. whereby Tuscan Retreat, Inc. assigned all rents, including rents paid by sub tenant residents, to Woodland Park Investment Co. L.L.C., which includes federal S.S.I. payments, which are included in some of said sub tenant/resident rents, which were assigned to Woodland Park Investment Co., L.L.C.  Pursuant to said assignment, Woodland Park Investment Co., L.L.C. shares a portion of those rents, including federal S.S.I. payments, with Tuscan Retreat, allowing it to keep whatever is left over after payment of expenses and payment of the master rent. Tuscan Retreat, Inc. and Woodland Park Investment Co. L.L.C. share expenses, in that, Woodland Park Investment Co., Inc., L.L.C. is believed to incur the expense

SECOND AMENDED COMPLAINT

32

of the trust deed payments.  Also, Tuscan Retreat, Inc. incurs expenses, in operating Park Ventura Retirement Hotel, said expenses which are paid by the rents owned, and assigned to, Woodland Park Investment Co., L.L.C.  Also, said rents owned by Woodland Park Investment Co. L.L.C. are used to pay   As such, Woodland Park Investment Co., L.L.C. and Tuscan Retreat, Inc., ar ejoint venturers at Park Ventura Retirement Hotel.  Furthermore,  Woodland Park Investment Co., LLC and Tuscan Retreat, Inc. both had the right to control the operation of Woodland Park Retirement Hotel/Park Ventura Retirement Hotel, from July 1, 2007.  However, the responsibility for the day to day operation of the business was, so long as Tuscan Retreat, Inc., complied with relevant law, was delegated to Tuscan Retreat, Inc.  Woodland Park Investment Co., LLC right to control the business  including the right to take over control of the business, if, Tuscan Retreat, Inc. did not run the business in accordance with the law.  the right to collect rent, lease the premises to subtenant residents.  Notwithstanding said lease agreement statement that it is not intended to create a joint venture, since the agreement shows  Woodland Park Investment Co. LLC and Tuscan Retreat, Inc. had an intent to, and did (1) carry out a single business enterprise, for profit (2)

SECOND AMENDED COMPLAINT

33

share profits of the business,  (2) had an intent to share profits of the business, (3) contribute an ownership interest in the enterprise, and (4) each had joint control over the business; although, control of the business was delegated to Tuscan Retreat, Inc.; thus, Woodland Park Investment Co., LLC and Tuscan Retreat, Inc. had an intent to form a joint venture.   As such Woodland Park Investment Company and Tuscan Retreat are, since approximately July 1, 2007, a joint venture in the operation of Woodland Park Retirement Hotel and Park Ventura Ventura Retirement Hotel.  Further, since all of the rents are assigned to Woodland Park Investment Co., L.L.C, and all expenses for the operation of said RCFE, from July 1, 2007 are paid out of said rents, the master lease agreement is actually a management agreement, wherein, Tuscan Retreat, Inc. manages the business of Woodland Park Retirement Hotel/Park Ventura Retirement Hotel for and on behalf of Woodland Park Investment Co, L.L.C.

12b.  Furthermore, the rent paid by Tuscan Retreat, Inc. to Woodland Park Investment Co,, Inc. is a sharing of profits, in that, the rent is approximately 50 per cent above the reasonable value of the rental of the premises.   This is reflected by the fact that said rent is approximately twice the amount of rent paid by Woodland

SECOND AMENDED COMPLAINT

Hills Retirement Center Inc to Woodland Park Investment Co., L.L.C. with said

difference in the rent being the approximate equivalent of amount paid to

Longwood Management Corporation, for management services, by Woodland

Hills Retirement Center, Inc.   Thus, Woodland Hills Retirement Center, Inc. was

paying about $50,000 to Longwood Management Corporation, for management

services, and, Woodland Park Investment Co. LLC, for rent, and Tuscan Retreat is

paying, to Woodland Park Investment Co., LLC, $50,000 per month, ostensibly

for rent, per month, but in actuality is payment of a reasonable amount of rent of

approximately $25,000. per month,  plus an additional profit of Tuscan Retreat,

Inc's monthly operation, in the approximate amount of $25,000.00 per month,

which makes up for the loss, to Longwood Management Company, of the

management fee paid, to it, by Woodland Hills Retirement Center, Inc.

     12c.  Furthermore, the facts stated in paragraphs 12a-b, show that Woodland

Park Investment Co., LLC was, from July 1, 2007, an owner of that business

called Woodland Park Retirement Hotel/Park Ventura Retirement Hotel, with

Tuscan Retreat, Inc. its manager/management company, for said business, in

addition to the alleged joint venture.  While the document calls itself a lease

SECOND AMENDED COMPLAINT

1   agreement, it is also, in effect, a management agreement.

2
3        13.   At all times herein mentioned it was defendants' goal to maximize

4   profits, at Woodland Park Retirement Hotel and Park Ventura Retirement Hotel,

5   regardless of the fact that to do so would result in residents, including Thelma

6
7   Stern, being abused or neglected.

8        14.   On April 30, 2010 Thelma Stern moved out of Park Ventura Retirement

9   Hotel, ending her tenancy as of the end of said day.

10

11       15.   In or about May, 2010 defendants were requested to save to provide

12  Thelma Stern's son, Kenneth M. Stern, with a copy of Thelma Stern's file,

13
14  including the materials required, by the Department of Social Services, to be

15  maintained.  Such request put defendants, on notice, that they might be sued for

16
17  the acts alleged herein.   Also, such request would put defendants on notice that

18  they needed to save the file, until they complied with the request

19
20       16.   Plaintiffs believes, and thereon alleges, that each defendant is, and at all

21  times mentioned was, the agent, employee, representative, successor and/or

22  assignee of each other defendant.  Plaintiff believes, each defendant, in doing the

23
24  acts, or in omitting to act as alleged in this complaint, was acting within the scope

25

26  ─────────────────────────────────────────────

27  SECOND AMENDED COMPLAINT

28                                        36

of his or her actual or apparent authority or the alleged acts and omissions of each

defendant as agent subsequently were ratified and adopted by each other defendant

as principal.

17.  At all times herein mentioned, Thelma Stern was, commencing at

minimum in 2003, within the meaning of Code of Civil Procedure section 352, due

to her Alzheimer's Disease/dementia (as used herein the term Alzheimer's Disease

includes the work dementia, even if the word dementia is not specifically used),

incapable of fully caring for her property or transacting business.   Because of her

Alzheimer's Disease Thelma Stern had severe short term memory loss.  That

memory loss made it incapable for her to fully care for her property and business,

in that, she would not be able, as to most business matters in which she had to

transact, to remember what business she had to transact, including the claims

stated herein, thus, would not be able to engage, by herself, in transacting such

business.  This included the fact that she would not remember the  wrongful acts,

alleged herein, that occurred; so, would not be able to transact the business of

knowing that there was a lawsuit to be filed, against defendants.  Furthermore, her

short term memory loss would also prevent her from remembering to, or plan to, or

SECOND AMENDED COMPLAINT

37

have the capability of engaging in such business transactions of paying bills.  She would not be able to remember what bills needed to be paid.  She would not have the ability to remember where the materials, such as the bills, themselves, and where her check book was kept.

18.  Thelma Stern was unable to care for most of her property for the same reasons, concerning her short term memory, in that her memory was such that she could not care for her property, such as her bank accounts, because she would not be able to remember what banks her accounts were with, where any paperwork where, regarding her accounts, would be located, could not keep, due to her Alzheimer's Disease, and being immobile in a wheelchair, at Woodland Park Retirement Home/Park Ventura Retirement Hotel, because the information therein could easily be stolen and stolen without her knowing such.

19.  Defendants have recognized, knew and understood Thelma Stern was unable  to care for her property and/or to take care of her business, as aforesaid, as shown by the fact that (1) defendants had Thelma Stern's son, Kenneth M. Stern, rather than Thelma Stern, sign, on Thelma Stern's behalf,  the admission agreements, at Woodland Park Retirement Hotel and Park Ventura Retirement

SECOND AMENDED COMPLAINT

38

Hotel, in September, 2007 and September, 2008, accepted payment of Thelma Stern's rent from Kenneth Stern, requested money, from Henry Stern or Kenneth Stern, when Thelma Stern needed to provide Woodland Park/Park Ventura Retirement Hotels, with funds.   As such, defendants have admitted, by their conduct, and are estopped from claiming that Thelma Stern does not come within the insanity definition of Code of Civil Procedure section 352.

20.   Furthermore, there is non statutory /implicit tolling, of all causes of action, in that, for Thelma Stern to sue defendants herein, while she was living at Woodland Park Retirement Hotel/Park Ventura Retirement Hotels would jeopardize Thelma Stern's health and safety; as, she would be subject to retaliatory abuse by defendants, which is in part reflected by Stephen Weisbarth's maniacal conduct, as alleged in more detail, hereinafter, towards Thelma Stern, on the day she moved from Park Ventura Retirement Hotel.  There was further tolling, in that, at all times mentioned Thelma Stern, through Henry Stern and Kenneth Stern, attempted to resolve continuing and ongoing problems at  Woodland Park Retirement Hotel/Park Ventura Retirement Hotel

21. All acts, and omissions, alleged herein, come with the meaning of

SECOND AMENDED COMPLAINT

Welfare and Institutions Code section 15610.07 of abuse of an elder adult, and Penal Code section 368 [c], in that, such acts or omissions constitute, either physical abuse, neglect, isolation financial abuse, or other treatment with resulting physical pain or mental suffering and/or the deprivation by a care custodian of goods or services that were necessary to avoid physical pain or mental suffering. At all times herein mentioned, unless otherwise stated, Thelma Stern was over the age of 65, was confined, in part or in full, to wheelchair, and had Alzheimer's Disease, as previously set forth.  Also, while in bed she had limited mobility, in that, she could not sit up by herself, lean forward by herself, reach for or obtain items not within her immediate grasp, could not get out of bed by herself, did not have sufficient strength to combat younger, stronger persons, when physically attacked and did not have the mobility to escape a physical attack by someone. Further, each defendant ratified, approved of and validated each wrongful act and omission, as alleged in the causes of action, hereinafter set forth, by allowing a pattern, practice custom of and habit of abuse and neglect to occur to residents of Woodland Park Retirement Hotel, Park Ventura Retirement Hotels and California Villa of Van Nuys, whom are either elderly, have dementia or both.  Longwood

SECOND AMENDED COMPLAINT

Management Corporation/Woodland Park Investment L.L.C. have further ratified and authorized defendant Ruchel Enterprises, Inc./Park Ventura Retirement (Hotel), by not terminating the lease at 21200 Ventura Blvd, Woodland Hills, Ca.; and, it is believed, by extending the lease, due to expire in September, 2014, although, due to Ruchel Enterprises, Inc./Park Ventura Retirement (Hotel) custom and habit of violating elder abuse and neglect law, of which Woodland Park Investment Company (and all Longwood Management Corporation subsidiaries, affiliated and related companies controlled by the Friedman Family, and the Friedman Family Trust) and said RCFEs have been put on probation, as aforesaid, Woodland Park Investment L.L.C., had a right to so terminate the lease.   The following acts and omissions, at California Villa of Van Nuys, most of which were directed at people with dementia in the dementia unit, is believed to have included not having proper alarms on the doors, rugs in residents rooms that have foul odors, are stained and torn, stained flooring, improper air conditioning, urine odor in tenant rooms, defective doorway, broken furniture, damaged walls, peeling wallpaper, improper door stoppers, allowing residents with dementia access to over the counter medications, alcohol, tobacco, and toxic substances, non

SECOND AMENDED COMPLAINT

41

functioning dementia type doors that prevent egress from persons with dementia, improper bed rails on beds, insufficient numbers and properly trained caregivers, not having proper written instructions to personnel as how to properly dispose of dirty diapers, allowing dirty diapers to remain in hallways causing an odorous stench, improper disposal of diapers in resident rooms, giving a resident too much narcotic drug Vicodan causing resident to become unconscious, repeated illegal evictions and failures to refund money, allowing residents to remain who had medical conditions which facility was not competent to treat, improper procedures regarding fingerprinting of employees, failure to provide proper paper work to the Department of Social Services, having an administrator, Stephen Weisbarth, who was not qualified to be an administrator, having an administrator, Jackie Beltran, who was not qualified to be an administrator, failure of administrator, Susan Weisbarth, to have reevaluated a resident's skin ulcer, hot water in excess of safe hot water standards, failure to do proper criminal investigations of employees, improper no refund clauses in its contracts with residents, battery upon a resident, placing a lock on an exit door that had to be removed by the fire department, losing resident prescription medications, not ordering resident medications in a

SECOND AMENDED COMPLAINT

timely fashion, threatening retaliation against residents if they complain about

matters and belittled residents, trying to give a resident the wrong medication,

employees improperly entering resident rooms and looking through resident

belongings, including acts and omissions alleged regarding Thelma Stern,

including but not limited to allowing the rooms and hallways of said facilities to

be filthy and unhealthy by allowing dirty diapers and feces to remain in the elderly

tenants' rooms, and in the hallways of said facilities, by depriving persons of food,

battering elderly residents, not having safe facilities, engaging in unlawful eviction

procedures, unlawfully forcing tenant(s) to move rooms.

22.   As to violations, wrongful acts and omissions regarding persons

residing at Woodland Park Retirement Hotel and  Park Ventura Retirement Hotel,

and the manner in which said place was operated, in addition to those alleged

against Thelma Stern herein, said are believed to have included Susan Weisbarth

and Steven Krivitsky lying to the Department of Social Services, claiming there

were no persons living at Park Ventura Retirement Hotel/Woodland Park

Retirement Hotel, allowing employees to use Thelma Stern' television which

included changing channels to channels which Thelma Stern would not want to

SECOND AMENDED COMPLAINT

43

watch with Thelma Stern being unable to turn the channel, herself, allowing people to live there who needed greater medical care, then the facility was able to provide\ not providing enough or proper food to residents, on more than one occasion not properly supervising or caring for residents with decubitus ulcers, including causing the death of one such tentant, lack of proper fire clearances failure to prevent malnutrition, failure to call 911 for resident who required medical attention, failure to allow medical personnel of residents choice, on more than one occasions improperly allowing medications to be in rooms of residents who are not supposed to have medications in their rooms, allowing resident bed to block patio, allowing employee to illegally take money from resident (reported to police 12/2008), failing to give residents their medications on discharge, verbal abuse, of residents, by Susan Weisbarth, having an employee who was stealing money, given by tenants/tenant families, to pay care givers, having dead cockroaches in the facility, requiring residents to use dirty dishes. failure to provider resident with toileting privacy, moving resident without proper notice to family, not having an intercom system, from room to front desk, that would stay properly connected and in working condition, requiring resident to reside in room

SECOND AMENDED COMPLAINT

with mildew due to water leak, refusal to return fees on death of resident, having cleaning items near the dementia unit door while door was not properly supervised or secured, allowing resident in dementia unit to be able to drink out of juice container which is indented for everyone's use with bread and other unidentified foreign matter floating in the container, allowing rug in dementia room to be smeared with feces, without cleaning such up, strong urine odor in dementia room, failing to properly care for persons in dementia unit with sores on their bodies, allowing resident to consume alcohol, become inebriated to the point, that without supervision, she would fall, not enough staff members to meet resident needs, having dirty and stained carpeting in several rooms, having a sofa with dirty brown stain which could be feces, having dirty resident rooms, dirty resident wheel chairs, no proper furniture for resident(s), no proper incontinent care plan for at least one resident, not having proper hallway doors, for people in wheel chair and obstructed doorway, not having storage room in dementia care unit locked, giving one resident's medication to another, insufficient bed rails on one resident bed, not having proper fingerprinting of employee, odor of cat urine and feces in room, defective bathroom wall, door lock of women's bathroom not

SECOND AMENDED COMPLAINT

working properly, no oxygen sign on room of person with oxygen, insufficient snacks, allowing resident to remain in soiled diapers overnight, even though resident would request assistance and no one would arrive to provide such, until the morning, allowing a person who a fall risk to fall on numerous occasions causing injury, causing a resident to break his leg due to lack of an adequate number of caregivers, having a rug at the entrance near in poor shape causing a tripping risk, dementia unit had odor of urine with dirty sheets piled in the hallway, not sufficient care givers in dementia unit, room in dementia unit had bed with box spring and mattress not on a frame with floor being dirty and stained, wheel chair dirty with stains and strong odor of urine. There was no shade on lamp, the resident was not bathed for a week, the resident would scream for assistance but without sufficient staff could not obtain help with a strong odor of urine in the room, another room had all types of filth, with a closet missing doors and dresser missing handles, and carpeting dirty with stains, the staff does not respond to emergency calls , with carpeting yet in another room stained, in the dementia activity room furniture was torn and items that should not have been accessible to residents was accessible, there were no lids on the trash cans,

SECOND AMENDED COMPLAINT

46

exposed wires, missing call boxes, resident on toilet calling for help with door open and exposed to the public, dirty diapers allowed to be on resident floors, bathroom light allowed to be inoperable for an unreasonable amount of time, not allowing a resident to have visitors, allowing resident to answer the telephone at the front desk, not ordering medications on a timely fashion, retained resident in room in which resident should not been have been allowed to reside, did not report fall of resident to appropriate authority, strong smell of urine in the hallway, resident not receiving needed medical treatment, allowing one resident to attack another and failed to report it to the proper governmental agency.

23.  Defendants further authorized and ratified the acts of their employees in failing to take sufficient corrective actions against the employees, including failing to terminate the employment of employees who engaged in willful and/or continuing wrongdoing.

24.  Company defendants further ratified the acts of Susan Weisbarth by maintaining her as an administrator at both Woodland Park Retirement Hotel, Park Ventura Retirement Hotel and California Villa of Van Nuys despite numerous and continuing violations, as substantiated by the Department of Social Services, at

SECOND AMENDED COMPLAINT

said RCFEs, of statutes and regulations, designed to protect the elderly and the disabled against abuse and neglect.

25.  Longwood Management Corporation, Woodland Hills Retirement Center, Inc., Woodland Park Investment Company, L.L.C. further ratified, authorized and are vicariously liable for negligent entrustment of the Residential Care Facility for the Elderly (RCFE) to Tuscan Retreat, Inc., Stephen Weisbarth, Tatyana Krivitsky, Steven Krivitsky, who were not competent to operate and manage the RCFE and who failed to terminate the lease, between Woodland Park Investment Company, L.L.C. and Tuscan Retreat, Inc., based upon Tuscan Retreat, Inc./Park Ventura Retirement (Hotels) repeated violations of statutes and regulations regarding its duty to not abuse and neglect the disabled and the elderly.

26.  The unlawful conduct of Woodland Park Retirement Hotel, Park Ventura Retirement Hotel, Tuscan Retreat, Inc., Susan Weisbath, Stephen Weisbarth, Tatyana Krivitsky, Steven Krivitsky,  Longwood Management Corporation, Woodland Hills Retirement Center, Inc., Woodland Park Investment Company, L.L.C and Ruchel Enterprises have been so pervasive, numerous, extreme and severe, that Park Ventura Retirement Hotel/Ruchel Enterprises, Inc.

SECOND AMENDED COMPLAINT

and California Villa of Van Nuys/Ruchel Enterprises have both been placed upon a probationary type status by the California Department of Social Services.

27.   There was little or no supervision, during the evening, particularly by the person authorized to manage Woodland Park Retirement Hotel and Park Ventura Retirement Hotel; as, Susan Weisbarth, Steven Krivitsky, Tatyana Krivitsky and Stephen Weisbarth would leave said RCFEs around dinner time, except, to the extent there was a period of time wherein the Weisbarths lived at Park Venture Retirement Hotel, but, were not present in their roles as Executive Director, administrator or manager.

FIRST CLAIM FOR VIOLATION OF 29 U.S.C. 794 AGAINST ALL DEFENDANTS EXCEPTING THE WEISBARTHS AND KRIVITSKYS.

28.   Plaintiff hereby incorporates paragraphs 1 through 27 above, as though fully set forth herein, at this place.

29.   Thelma Stern was disabled, as, defined in 29 U.S.C. 729 (29 U.S.C. 705(20)(B), 42 U.S.C. 12102 as, she had an inability to move in such a manner, while in bed, to be able to obtain her telephone, if it was not within her immediate reach, had short term memory loss, such that, is she called the front desk receptionist at Woodland Park Retirement Hotel/Park Ventura Retirement Hotel,

SECOND AMENDED COMPLAINT

49

she would not remember she had recently called, thus causing her to call said front desk numerous times within a short period of time.   She also, while alone, if in her wheelchair, in her room, unable to propel herself to get her wheelchair, if she were in her room.  She was considered "bedridden" which according to relevant statutes and/or regulations related to RCFEs meant that she was unable to move about, by herself, in her bed. Further, because while in bed she was unable to take care of herself , if she were not promptly taken care of, it would necessitate her to call the said front desk receptionist.  Thelma Stern was otherwise qualified to use her telephone; in that, if she was able to reach her telephone, she was able to use such.  She could use here telephone, while in bed, if she was reasonably accommodated by having the telephone put within her reach, while in bed or in her wheelchair, while in her room.

30.  Solely by reason of Thelma Stern disabilities which caused her to call said front desk receptionist numerous times, within short periods of times, she was subjected to discrimination, in that, defendants named in this claim had a duty to make sure Thelma Stern's telephone was, while she was in bed, within her reach, and, discriminated, against her, based upon her disability, by deliberately placing

SECOND AMENDED COMPLAINT

her telephone where she could not reach it, to deprive her from its use in calling said front desk receptionist.

31.  Said discrimination was under any program or activity receiving Federal financial assistance; as, defendants Longwood Management Company, Woodland Hill Retirement Center, Inc., Woodland Park Investment Company, L.L.C. and Tuscan Retreat, Inc. all received federal funds, including but not limited to Supplement Security income, S.S.I., which is not a general purpose government assistance; but, is a specialized form of targeted aid and support which is specifically tailored to provide disabled persons with assistance in obtaining housing and which defendants accept, from S.S.I. recipients, for the specific purpose of providing housing for disabled persons and is paid directly to defendants and are the intended recipients of the funds.    Defendants, Longwood Management Corporation also receives  Medicare and Medi-cal, including, as to Medi-cal, funds for its facility Woodland Park Retirement Hotel/Park Ventura Retirement Hotel and plaintiff is informed and believes that Tuscan Retreat, Inc. has, minimally, from December, 2007 through February, 2008, which is also targeted aid and support paid directly to defendants and are the intended recipients

SECOND AMENDED COMPLAINT

1  of the funds.[1]  Also, Longwood Management, by virtue of of its operation of

2  approximately 30 nursing homes, at all times relevant herein, obtained federal

3  financial assistance in the form of medicare.  Also, plaintiff is informed and

4  believes that, from 2001 though, at minimum, September 1, 2008, those persons

5  working at Woodland Park Retirement Hotel/Park Ventura Retirement Hotel, were

6  general employees, and/or  special employees, by virtue of the fact that it was

7  Longwood Management Corporation whose RCFE's employees, operated said

8  RCFE's, including controlling, supervising and managing said employees, which

9  is reflected, in part, by the fact that (1) Longwood Management Company has

10  presented itself, to the California Department of Health Services as the operator of

11  said RCFE and receiving medi-cal funds for such, and, (2) virtually the entirely

12  monthly net profit, for said RCFE, was paid to Longwood Management

13  Corporation.   Also, Longwood Management Corporation supervised, managed

14  and controlled all employees at Woodland Park Retirement Hotel/Park Ventura

15  Retirement Hotel though, at minimum September 1, 2008.   At all time relevant,

---

[1]  This is plead mindful of the District Court's ruling that SSI was not
federal funds for 29 U.S.C. 794 purposes.  However, such is repleaded to preserve
plaintiff's right to appeal such ruling, if necessary.

SECOND AMENDED COMPLAINT

employees at Woodland Park Retirement Hotel, and Longwood Management

Corporation itself, represented themselves to be the owners, operators and

managers of Woodland Park Retirement Hotel.  Longwood Management

Corporation, Woodland Hills Retirement Center, Inc. and Woodland Park

Investment, Co. are a joint venture, as described in paragraphs 6 and 10, such that,

they are in reality, and as a practical matter, and legally treated as, but one entity.

Also, Tuscan Retreat, Inc. and Woodland Park Investment Co, L.L.C., for the

reasons stated in paragraphs 10 and12-12c are a joint venture and are also a joint

venture with Tuscan Retreat, Inc..  Also, since Longwood Management

Corporation, Woodland Hills Retirement Center, Inc. and Woodland Park

Investment Company Inc. are, as aforesaid, treated as one entity, that group is also

a joint venturer with Tuscan Retreat, Inc, regarding Woodland Park Retirement

Hotel/Park Ventura Retirement Hotel, as described in parap   Further, they are

principally involved in the business of providing housing services.   All

defendants named in this claim are in the business of providing housing to the

disabled.

    32.   As part of Woodland Park Retirement Hotel and Park Ventura

SECOND AMENDED COMPLAINT

Retirement Hotel's  duties as care custodian, of Thelma Stern, it had the duty to make sure that she had access to her telephone, while she was in bed.   Prior to September 1, 2008, on numerous occasions, Thelma Stern's son, Kenneth M. Stern, asked Susan Weisbarth to make sure that Thelma Stern's telephone, while she was in bed, was in a position where Thelma Stern could reach the telephone, because if it was not so positioned, she would not be able to reach it herself.  Such request was also made to Steven Krivitsky who stated the problem, of Thelma Stern not having her telephone, would be taken care of.    Furthermore, shortly before Thelma Stern's son, Kenneth M. Stern was going to have his hip replacement surgery, he told Stephen Weisbarth he did not want this problem, with Thelma Stern being deprived of her telephone, while Kenneth M. Stern was in the hospital or rehabilitation facility.  Stephen Weisbarth assured Kenneth M. Stern it would not happen.  Yet it happened twice between October 23, 2009 and November 5, 2009, while Kenneth M. Stern was in the rehabilitation facility.

33.  Also, on at least 10 occasions prior to September 1, 2008 and on or about September 2, 24, 26, October 3, 6, 8, 28  2008, November 13, December 9-11, 18-19, 22 and 26, 2008, January 12, 22, 25, 27, February 6, April 30, May 1,

SECOND AMENDED COMPLAINT

May 5, 30, June 10, September 10, 2009, November 9, and November 27, 2009, and on numerous occasions previous thereto, and thereafter, Park Ventura Retirement Hotel and employees deprived Thelma Stern, who was bed ridden, of her telephone by deliberately placing such in a position where she could not reach such.  This was done, by employees at Park Ventura Retirement Hotel, whose specific identities are unknown but include, at minimum, Melba and Susan Weisbarth, because its staff and in particular the night receptionist Melba, became annoyed that Thelma Stern who, due to her Alzheimer's Disease, would call Park Ventura Retirement Hotel and Woodland Park Retirement Hotel's front desk several times during the evening.  This conduct took place while said persons were at work, at Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, on duty and acting as a care giver or care custodian for Thelma Stern and was an outgrowth of the  employment, engendered by the employment and had a causal nexus to the work, in that, making sure Thelma Stern had access to her telephone was the responsibility of  Woodland Park Retirement Hotel and Park Ventura Retirement Hotel.  Steven Krivitsky and Tatyana Krivitsky, from July 1, 2007 through April 30, 2010, as managers and/or administrators of Woodland Park

SECOND AMENDED COMPLAINT

Retirement Hotel and Park Ventura Retirement Hotel, and officers and directors of

Tuscan Retreat, Inc. and Susan Weisbarth , from approximately July 1, 2007

through approximately September 10, 2009, as administrator and manager  of said

RCFE, and Stephen Weisbarth, from approximately September 10, 2009 through

April 30, 2010, as Executive Director, assistant administrator and manager, had

the responsibility to make sure Thelma Stern was properly cared for, and were

responsible for the policies concerning such, including making sure she had her

telephone, within her reach, while she was in bed, and also were responsible for

the proper conduct, and had the authority and duty  to discipline or terminate

employees, at Woodland Park Retirement Hotel and Park Ventura Retirement

Hotel.  Said defendants failed to stop the unlawful practice and failed to properly

discipline or terminate two persons known to have engaged in the unlawful

practice being Doug and Melba.

     34.  Not having her telephone, when she wanted to make a telephone call,

and not being able to reach her telephone, when someone was calling, was

upsetting and annoying to Thelma Stern.  As such, plaintiff is entitled to emotional

distress damages, in an amount to be proved at trial.

SECOND AMENDED COMPLAINT

35.  As a result of defendants' conduct, herein, Thelma Stern is entitled to an award of attorney's fees.

36.  Furthermore, defendants conduct was intentional, oppressive and malicious, entitling Thelma Stern to punitive and exemplary damages, in a sum to be determined by a jury.

37.  This conduct was oppressive, in that, depriving Thelma Stern of her telephone subjected her to cruel and unjust hardship in conscious disregard of that Thelma Stern's rights, in that, Thelma Stern had an absolute right to have her telephone so that she could make telephone calls, call for help from her caregivers, and received telephone calls. It was frustrating to Thelma Stern to not be able to do so.  As a bedridden person, with little mobility and with Alzheimer's Disease, Thelma Stern was a vulnerable person who could not protect herself against such deliberate abuse. Also, defendants' misconduct was a result of Thelma Stern frequently calling the receptionist.  This was a result of Thelma Stern's Alzheimer's Disease, which, due to her short term memory losses, would cause her to forget her previous calls to the receptionist.  Defendants knew Thelma Stern, and others at the RCFE, had dementia; but, the RCFE was not licensed to have

SECOND AMENDED COMPLAINT

such.  When Tuscan Retreat, Inc. applied for its license, to operate the RCFE,

Susan Weisbarth and Steven Krivitsky lied to the D.P.S.S., falsely claiming there

were no persons, at Park Ventura Retirement Hotel, who had dementia.  Park

Ventura Retirement Hotel was cited for misconduct, by the D.P.S.S., for not being

properly licensed to have residents with dementia.  Further, Tuscan Retreat, Inc.,

Tatyana Krivitsky and Steven Krivitsky have stated there was nothing wrong with

her not having her telephone because she could have screamed, from her bed, in

her room, to have someone come and give her telephone.  This was also conduct

which resulted in mental suffering and constituted depravation, by a care

custodian, of services necessary to avoid mental suffering, in violation of Welfare

and Institutions Code section 15610.07.  This also violated California Code of

Regulations section 87468, as; it did not provide her dignity in her relationships

with the RCFE staff, did not accord her safe, comfortable   accommodation or

furnishings and equipment, it constituted unusual punishment, mental abuse and

constituted actions of a punitive nature which deprived Thelma Stern of her

property, failed to allow her to keep and use her own personal property, to have

access to her telephone to make confidential calls, Defendants knew of these

SECOND AMENDED COMPLAINT

rights; as, they were incorporated in the lease with Thelma Stern's dated, as signed by Thelma Stern's representative, on September 1, 2009,   It also violated Health and Safety Code section 15619.312 in that, if failed to assist Thelma Stern with the instrumental activities of daily living which met Thelma Stern's needs.  All.stated statutes and regulations are promulgated to protect elders against abuse.

38.  This conduct was malicious, in that, it was intentional conduct which was intended to cause Thelma Stern the injury of not having use of her telephone. It was also malicious, in that,  it was despicable and was done with a will and knowing disregard of the rights of Thelma Stern, in that such conduct would be looked down on and despised by reasonable people. (See also the facts in the preceding paragraph.)

39.  Plaintiff is entitled to general damages, for the distress and inconvenience of not being able to have her telephone, to use.

SECOND CLAIM FOR ADA[2] AND  UNRUH ACT-STATE DISABILITY

---

[2]  ADA violations pleaded were pleaded in the Complaint and First Amended Complaint.  However, it was referenced that such were not being pursued.  They are being pleaded but not pursued, concerning issues of whether the United States Attorney General is required to join the action, to pursue ADA claims.  Plaintiff is pleading, herein, but not pursuing, such ADA claims at this

---

SECOND AMENDED COMPLAINT

DISCRIMINATION BY PLAINTIFF AGAINST ALL DEFENDANTS, EXCEPTING THE WEISBARTHS AND KRIVITSKYS ARE NOT SUED FOR VIOLATION OF THE ADA.[3]

40.   Plaintiff hereby incorporates paragraphs 1 through 27 and 28 through 39 above, as though fully set forth herein, at this place.  In addition to said paragraphs, plaintiff further alleges, in addition thereto, the following.

_____

time.  This is because (1) it is unclear from the Court's prior order that pursuing such, although such was pleaded, but not pursued, in the Complaint, would, as per the order,  whether such would constitute new claims, (2) while the United States Attorney General is in the process of determining whether to join this action, it has not so yet decided, and (3) while counsel for plaintiff believes the ability to pursue said Title III monetary damage claims, should not be legally be dependent upon whether the United States Attorney General joins the action, counsel has not yet found authority to support his position.  In the even the Attorney General decides to join this action, or it is determined plaintiff's right to sue for monetary damages is not lawfully dependent upon joinder of the Attorney General, plaintiff shall seek to pursue the ADA claims, at that time.

Further, said conduct appears that it may be a violation of federal FHA(A) laws.  However, due to significant statute of limitation issues, dependent upon whether a tolling theory would apply, and, the Court's Order that no new claims be alleged, such is not being asserted; although, likely the facts alleged, as to ADA and Unruh Act, would also support FHA(A) claims, excepting the tolling thoery.  Plaintiff reserves the right, in the future, to seek a Court ruling whether such FHA(A) would properly be pleaded as surviving, by tolling, a statute of limitations defense.

[3]  Most named causes of action alleged several violations, each of which would be a separate Claim.  However, as a matter of practicality, related violations are grouped together under the heading of one Claim.

SECOND AMENDED COMPLAINT

60

41. The claims in this claim, as to Stephen Weisbarth, are only for those items from September 10, 2009.

42.  Thelma Stern was entitled to a reasonable accommodation of having her telephone put where she could reach and use it, in that, she had a right to have her telephone to make and receive calls.

43.  The accommodation of the Woodland Park Retirement Hotel and Park Ventura Retirement hotel making sure that Thelma Stern could reach, and use, her telephone, when she was in bed was necessary because due to Thelma Stern's disability of not being able to move in such a manner to obtain the telephone, if it was not in her immediate reach, it was necessary to put such in a position where she could reach it.

44.  Melba has, on at least one occasion, went into Thelma Stern's room, when the telephone ringing, with Thelma Stern's son, Kenneth M. Stern calling Thelma Stern, handed Thelma Stern the telephone and told Thelma Stern an untruthful story to tell, Kenneth M. Stern, as to why it took so long for Thelma Stern to answer the telephone.

45.  Melba has stated that, on at least one occasion, Susan Weisbarth took

SECOND AMENDED COMPLAINT

61

Thelma Stern's telephone, while Thelma Stern was in bed, and deliberately put it in a place where Thelma Stern could not reach the telephone.

46.   Such failure to correct the problem constituted authorization and ratification, by defendants, of the conduct alleged herein; in that, the conduct was engaged in over a lengthy period of time, and defendants failed and refused to correct the problem.  Furthermore, Melba was not adequately disciplined for such, in that, despite the continuing said misconduct, towards Thelma Stern, at Melba's behest, and on her behalf, she was not sufficiently disciplined for such, which should have included being terminated, which she was not, for her ongoing wrongful acts against Thelma Stern.  If not terminated, she should have, at minimum, put in a place where she could not further involve herself in the deprivation of Thelma Stern's telephone

47.   Furthermore, defendants named in this Claim, including Tuscan Retreat, Inc., Steven Krivitsky, Tatyana Krivitsy, Susan Weisbarth and Stephen Weisbarth, had knowledge of all material facts concerning the deprivation of Thelma Stern's telephone, prior to institution of the lawsuit and are defending such acts.  Furthermore, Steven Krivitsky and Tatyana Krivitsky have state there

SECOND AMENDED COMPLAINT

was no misconduct, and Thelma Stern could be deprived of her telephone, because she could scream, from her bed in her bedroom, that she wanted her telephone. Such denial of misconduct, intent to abide such act, and interposing a defense to the allegations, constituted ratification.

48.  This violated Thelma Stern's disability rights, pursuant to the California Unruh Act, Civil Code sections 51 (b) and (f) and 52, her disabilities being her Alzheimer's Disease and her being bed ridden, with lack of mobility to be able to sit up and reach a telephone not within her immediate reach, a was unable to protect herself against such conduct.  Plaintiff is entitled to a minimum of $4,000.00 statutory damages, per incident, for a total of not less than $200,000.00, plus interest on said amounts at the rate of 7% prior to judgement, attorney's fees and punitive and exemplary damages.  The conduct is also a violation of the American with Disabilities Act, entitling plaintiff  to ADA general damages.

49.  Susan Weisbarth, Stephen Weisbarth, Tuscan Retreat, Inc., Tatyana Krivitsky and Steven Krivitsky had advance knowledge of Melba's unfitness, as, complaint was made about her conduct and participation in the deprivation of Thelma Stern's telephone.  Yet, they allowed Melba to be the night receptionist,

SECOND AMENDED COMPLAINT

allowing her to continue in the depravation of Thelma Stern's telephone.

50.  Susan Weisbarth authorized and ratified the conduct by personally engaging in the misconduct.

51.  Susan Weisbarth, Stephen Weisbarth Tatyana Krivitsky,  Steven Krivitsky and Tuscan Retreat, Inc. were managing agents  for Woodland Hills Retirement Center, Inc., Woodland Park Investment Co., L.L.C., Tuscan Retreat, Inc. and Ruchel Enterprises, in that, said individuals, and Tuscan Retreat, Inc., managed and operated Park Ventura Retirement Hotel for said business entities.

THIRD CLAIM FOR ELDER ABUSE BY PLAINTIFF AGAINST ALL DEFENDANTS.

52.  Plaintiff hereby incorporates paragraphs 1through 27 and 28 though 51 above, as though fully set forth herein, at this place.  In addition to said paragraphs, plaintiff further alleges, in addition thereto, the following.  The deprivation of Thelma Stern's telephone, as alleged is  conduct which violated California Welfare and Institutions Code section 15610.07.  Such conduct was oppressive and malicious, for the reason that such was done intentionally, with the intent to deprive plaintiff of her telephone, so that she could not use such, to call the reception desk.  This was an intentionally retaliation against plaintiff, due to

SECOND AMENDED COMPLAINT

her disability, and, an intentional deprivation of plaintiff's rights, as a disabled person.  She had a right to have her telephone, without having such phone taken for her, or deliberately put in a place wherein she could not use such.  This  was oppressive conduct, in that, it was despicable conduct that subjected plaintiff  to cruel and unjust hardship in conscious disregard of plaintiff's rights, in that, plaintiff was thereby isolated, not being able to make telephone calls to persons, whom she wished to call, including the involved RCFE to obtain care, and, deprived plaintiff of the ability to receive telephone calls from persons whom wished to make telephone calls to plaintiff.   It was malicious in that it was conduct which was intended by defendants to cause injury to the plaintiff and despicable conduct which was carried on by defendants with a willful and conscious disregard of the rights of plaintiff, being the right to have her telephone so she could make and receive telephone calls, and not be isolated by such inability..   Plaintiff is entitled to punitive and exemplary damages and attorney's fees.

53.  As a result of defendant's conduct, herein, plaintiff is entitle to general damages including emotional distress damages.

SECOND AMENDED COMPLAINT

65

FOURTH CLAIM FOR VIOLATION OF THE ADA AND  CALIFORNIA CIVIL CODE SECTION 51 (b) AND (f) AND 51.7 BY PLAINTIFF AGAINST ALL DEFENDANTS EXCEPTING THE WEISBARTHS AND KRIVITSKYS ARE NOT SUED FOR VIOLATION OF THE ADA.

54.  Plaintiff hereby incorporates paragraphs 1 through 27 and 40 through 53  above, as though fully set forth herein, at this place.

55. Defendant's employees battered Thelma Stern, on no less that three occasions, as follows:

Count 1 (this count is not against Stephen Weisbarth)

56.  Prior to January 26, 2009 defendants employee Melba was, as previously referenced herein, involved in wrongful conduct towards Thelma Stern by being involved in a plan to deprive Thelma Stern of her telephone.  Melba was not sufficiently disciplined for such, in that, she should have had her employment terminated.  Thelma Stern, and many other residents at Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, were elderly, infirm and disabled.  A person, such as Melba, who is know to have abused the residents, at such an RCFE, thus, should not have been allowed to have access to such person, including Thelma Stern.

57.  Furthermore, Melba worked, unsupervised, during the evening.  As

SECOND AMENDED COMPLAINT

66

such, there was no one present, at Woodland Park Retirement Hotel and Park

Ventura Retirement Hotel, to prevent Melba from abusing Thelma Stern and other

residents at said location.

58.   On January 26, 2009, Melba had a dislike for Thelma Stern because (1)

complaints had been made about Melba depriving Thelma Stern of her telephone,

and, Thelma Stern annoyed Melba by Thelma Stern frequently, due to Thelma

Stern's Alzheimer's Disease, calling the front desk, requiring Melba to answer

Thelma Stern's calls, on a highly frequent basis

a.   On January 26, 2009 defendants' employee, Melba, while Thelma Stern

was in bed and defenseless, attacked Thelma Stern taking a piece of chicken, out

of her hand, without Thelma Stern's consent, in a rude manner.  Melba had no

legitimate reason to go into Thelma Stern's room.  Plaintiff believes that Melba

went into Thelma Stern's room to put Thelma Stern's telephone in a position

wherein Thelma Stern could not reach such.

59.   Defendants ratified said conduct by failing to properly discipline Melba

by allowing her access to elderly, disabled and defenseless persons, including

Thelma Stern, which is intolerable in an assisted living home.  Defendants further

SECOND AMENDED COMPLAINT

67

ratified the conduct by claiming there was nothing wrong with Melba's conduct.

Defendants further ratified Melba's conduct by, with knowledge of all the material

facts concerning the conduct, before the lawsuit was filed, or expected to be an

affirmative defense after an answer is filed, have defended against such conduct.

Defendants further ratified said conduct by failing to report the incident, as

required by law, to the California Department of Social Services.

Count 2

60.  Before September 10, 2009  Park Ventura's employee, believed to be

Douglas, as specified by Stephen Weisbarth, battered Thelma Stern by grabbing

her telephone out of her hands, without her permission and consent. and in a rude

manner.   Prior to said date, defendants knew Douglas was a problem employee, in

that, as stated by Stephen Weisbarth, he had a bad attitude.  Because persons at

Park Ventura Retirement Hotel, including Thelma Stern,  were elderly and/or

disabled, thus, particularly vulnerable to abuse, an RCFE should not have any

problem employees, including those with a bad attitude, because, having such

employees makes it foreseeable that such employees may abuse the RCFE

residents, including Thelma Stern.  Because persons at Park Ventura Retirement

SECOND AMENDED COMPLAINT

68

Hotel, including Thelma Stern,  were elderly and/or disabled, thus, particularly vulnerable to abuse, an RCFE should not have any problem employees, including those with a bad attitude, because, having such employees makes it foreseeable that such employees may abuse the RCFE residents, including Thelma Stern. As a result of such, defendants authorized and ratified said conduct.  This was part of the pattern and practice of depriving Thelma Stern of her telephone, which defendants failed to cure.  This was part of the pattern and practice of depriving Thelma Stern of her telephone, which defendants failed to cure which was authorization and ratification. at this place, which was further authorization and ratification.

61.  Defendants ratified said conduct, in that, with knowledge that Douglas had a bad attitude, defendants allowed Douglas to have access to the residents, who were elderly, disabled, frail, and defenseless persons, including Thelma Stern, which should, considering the vulnerability of said elderly residents, including Thelma Stern, never been allowed.   Defendants further ratified said conduct by failing to report the incident, as required by law, to the California Department of Social Services.  Further, Steven Krivitsky and Tatyana Krivitsky, from July 1,

SECOND AMENDED COMPLAINT

69

2007 through April 30, 2010, as managers and/or administrators of Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, Susan Weisbarth , from approximately July 1, 2007 through approximately September 10, 2009, as administrator and manager  of said RCFE, and Stephen Weisbarth, from approximately September 10, 2009 through April 30, 2010, as Executive Director, assistant administrator and manager, had the responsibility to make sure Thelma Stern was properly protected against violence by Woodland Park Retirement Hotel and Park Ventura Retirement Hotel employees, also were responsible for the proper conduct, and had the authority and duty  to discipline or terminate employees, at Woodland Park Retirement Hotel and Park Ventura Retirement Hotel.  They failed to properly discipline or terminate Melba and Doug.

Count 3.

62.  On or about September 10, 2009,  Park Ventura's employee, believed to be Douglas, as specified by Stephen Weisbarth battered Thelma Stern by grabbing her telephone out of her hands, without her permission and consent and in a rude manner.   Prior to said date, defendants knew Douglas was a problem employee, in that, he had a bad attitude. Because persons at Park Ventura Retirement Hotel,

SECOND AMENDED COMPLAINT

including Thelma Stern,  were elderly and/or disabled, thus, particularly

vulnerable to abuse, an RCFE should not have any problem employees, including

those with a bad attitude, because, having such employees makes it foreseeable

that such employees may abuse the RCFE residents, including Thelma Stern.

63.  Defendants ratified said conduct, in that, with knowledge that Douglas

had a bad attitude, defendants allowed Douglas to have access to the residents,

who were elderly, disabled, frail, and defenseless persons, including Thelma Stern,

which should, considering the vulnerability of said elderly residents, including

Thelma Stern, never been allowed.  Because persons at Park Ventura Retirement

Hotel, including Thelma Stern,  were elderly and/or disabled, thus, particularly

vulnerable to abuse, an RCFE should not have any problem employees, including

those with a bad attitude, because, having such employees makes it foreseeable

that such employees may abuse the RCFE residents, including Thelma Stern.

Defendants further ratified said conduct by failing to report the incident, as

required by law, to the California Department of Social Services.

64.  As part of said  RCFE's  duties as care custodian, of Thelma Stern, it

had the duty to make sure that Thelma Stern was not the victim of unlawful

SECOND AMENDED COMPLAINT

71

conduct, including physical assaults, by said RCFE's employees.   This conduct took place while said employees were at work, at said RCFE, on duty and acting as a care giver or care custodian for Thelma Stern  and was an outgrowth of the employment, engendered by the employment and had a causal nexus to the work, in that, making sure Thelma Stern had access to her telephone was the responsibility of said RCFEs, and the conduct related thereto.  Also, as to the physical assault in which he chicken was taken, care of Thelma Stern's needs, while she was in bed had a was an outgrowth of the employment, engendered by the employment and had a causal nexus to the work.   As managing agents, or Park Ventura Retirement Hotel, Steven Krivitsky, Tatyana  Krivitsy, Stephen Weisbarth and Susan Weisbarth all had the duty to make sure that said Park Ventura Retirement Hotel's duties were met, not breached.  As to all Counts, defendants named in this Claim, including Tuscan Retreat, Inc., Steven Krivitsky, Tatyana Krivitsy, Susan Weisbarth and Stephen Weisbarth, had knowledge of all material facts concerning the physical attacks on Thelma Stern, prior to institution of the lawsuit and are defending such acts.

65.  This conduct was oppressive, in that, physically attacking Thelma

SECOND AMENDED COMPLAINT

Stern, a defenseless and disabled 89-90 year old woman, subjected her to cruel and

unjust hardship in conscious disregard of Thelma Stern's rights, in that, Thelma

Stern had an absolute right to be free from being battered.  She has expressed fear,

frustration and anger as to being attacked, as alleged..  As a bedridden person,

with little mobility and with Alzheimer's Disease, Thelma Stern was a vulnerable

person who could not protect herself against such deliberate physical attack. Also,

defendants' misconduct was a result of Thelma Stern frequently calling the

receptionist.  This was a result of Thelma Stern's Alzheimer's Disease, which, due

to her short term memory losses, would cause her to forget her previous calls to

the receptionist.  Defendants knew Thelma Stern, and others at the RCFE, had

dementia; but, the RCFE was not licensed to have such.  When Tuscan Retreat,

Inc. applied for its license, to operate the RCFE, Susan Weisbarth and Steven

Krivitsky lied to the D.P.S.S., falsely claiming there were no persons, at Park

Ventura Retirement Hotel, who had dementia.  Park Ventura Retirement Hotel was

cited for misconduct, by the D.P.S.S., for not being properly licensed to have

residents with dementia.   This was also conduct which resulted in mental

suffering caused by care custodians, entrusted to help Thelma Stern, not physically

SECOND AMENDED COMPLAINT

73

attack her. necessary to avoid mental suffering, in violation of Welfare and Institutions Code section 15610.07.  This also violated California Code of Regulations section 87468, as; it did not provide her dignity in her relationships with the RCFE staff, did not accord her safe, comfortable  accommodation it constituted unusual punishment, mental abuse and constituted actions of a punitive nature which deprived Thelma Stern of her safety and dignity.   All.stated statutes and regulations are promulgated to protect elders against abuse.

66.  This conduct was malicious, in that, it was intentional conduct which was intended to cause Thelma Stern the injury of being terrorized, made fearful, violated her right to the physical integrity of her person..  It was also malicious, in that,  it was despicable and was done with a will and knowing disregard of the rights of Thelma Stern, in that such conduct would be looked down on and despised by reasonable people.  Susan Weisbarth, Stephen Weisbarth, Tuscan Retreat, Inc., Tatyana Krivitsky and Steven Krivitsky  had advance knowledge of Melba's and Douglas unfitness, as alleged.  Yet, they allowed Melba to be the night receptionist, allowing her to continue in the depravation of Thelma Stern's telephone and allowed Douglas access to Thelma Stern.

SECOND AMENDED COMPLAINT

67.  Susan Weisbarth, Stephen Weisbarth Tatyana Krivitsky,  Steven Krivitsky and Tuscan Retreat, Inc. were managing agents  for Woodland Hills Retirement Center, Inc., Woodland Park Investment Co., L.L.C., Tuscan Retreat, Inc. and Ruchel Enterprises, in that, said individuals, and Tuscan Retreat, Inc., operated Park Ventura Retirement Hotel for said business entities.

68.  Thelma Stern has a right to a reasonable accommodation of not having force and violence used, against her, in the manner alleged, as due to her disability of not having sufficient mobility, or strength, including being defenseless in bed, because, as a person so disabled, she had a right not to be taken advantage of, by the use of force and violence, in that manner alleged.

69.  The accommodation was necessary; because, as an elderly lady who did not have the mobility or strength to protect herself against such attacks, it was necessary for defendants to take sufficient measures to protect Thelma Stern against such attacks, which they failed to so do.

70.  This violated Thelma Stern's disability rights, pursuant to the California Unruh Act,, Civil Code sections 51 (b) and (f), 51.7, and 52 , her disabilities being her Alzheimer's Disease and her being bed ridden, with a lack of

SECOND AMENDED COMPLAINT

75

mobility to protect herself against such physical attacks, she was unable to protect herself . She is entitled to statutory fees of $25,000.00 per incident for a total of not less that $75,000.00 and also $4,000.00 statutory fees, per incident, for a total of $12,000.00, plus interest on said amounts at the rate of 7% prior to judgement. The conduct is also a violation of the American with Disabilities Act, entitling plaintiff  to ADA general damages.

71.  As part of said  RCFE's  duties as care custodian, of plaintiff, it had the duty to make sure that Thelma Stern was not the victim of unlawful conduct, including physical assaults, by said RCFE's employees.  This conduct took place while said employees were at work, at said RCFE, on duty and acting as a care giver or care custodian for Thelma Stern  and was an outgrowth of the employment, engendered by the employment and had a causal nexus to the work, in that, making sure Thelma Stern had access to her telephone was the responsibility of said RCFEs, and the conduct related thereto.  Also, as to the physical assault in which he chicken was taken, care of Thelma Stern's needs, while she was in bed had a was an outgrowth of the employment, engendered by the employment and had a causal nexus to the work.   As managing agents, or Park

SECOND AMENDED COMPLAINT

76

Ventura Retirement Hotel, Steven Krivitsky, Tatyana  Krivitsy, Stephen Weisbarth and Susan Weisbarth all had the duty to make sure that said Park Ventura Retirement Hotel's duties were met, not breached. As to all Counts, defendants named in this Claim, including Tuscan Retreat, Inc., Steven Krivitsky, Tatyana Krivitsy, Susan Weisbarth and Stephen Weisbarth, had knowledge of all material facts concerning the physical attacks on Thelma Stern, prior to institution of the lawsuit and are defending such acts.  Defendants further ratified said conduct by failing to report the incident, as required by law, to the California Department of Social Services.

72.  As a result of defendants' oppressive and malicious conduct, as described in this Claim, plaintiff is entitled punitive and exemplary damages, in a sum to be determined by a jury.

73.  As a result of defendants' conduct, herein, plaintiff is entitled to an award of attorneys fees.

FIFTH CLAIM FOR ELDER ABUSE AGAINST ALL DEFENDANTS.

74.  Plaintiff hereby incorporates paragraphs 1 through 27 and 54 through 73  above, as though fully set forth herein.

SECOND AMENDED COMPLAINT

75.  The conduct of plaintiff being physically attacked, as aforesaid, constituted elder abuse pursuant to Welfare and Institutions Code section 15610.07, and Penal Code section 368[c], as Thelma Stern is over the age of 65 and had disabilities being her Alzheimer's Disease, being bed ridden, and confined to a wheelchair.  Such conduct was oppressive and malicious, for the reason that such was done intentionally, with the intent to commit batterys on plaintiff and intrude upon her right to be free from unwanted physical touching.  This was oppressive conduct, in that, it was despicable conduct that subjected plaintiff  to cruel and unjust hardship in conscious disregard of plaintiff's rights, in that, plaintiff was entitled to be free from such physical intrusions upon her.   It was malicious in that it was conduct which was intended by defendants to cause injury to the plaintiff and despicable conduct which was carried on by  defendants with a willful and conscious disregard of the rights of plaintiff, regarding her right to be free from physical intrusion, upon her.

76.  As a result of defendant's conduct, herein, plaintiff is entitle to general damages for emotional distress, in addition to the remedies incorporated herein.

SIXTH CLAIM FOR ADA AND UNRUH ACT DISABILITY
DISCRIMINATION AGAINST ALL DEFENDANTS EXCLUDING SUSAN

SECOND AMENDED COMPLAINT

WEISBARTH AND EXCEPTING THE WEISBARTHS AND KRIVITSKYS ARE NOT SUED FOR VIOLATION OF THE ADA.

77.  Plaintiff hereby incorporates paragraphs 1 through 27 above, as though fully set forth herein, at this place.

78.  Prior to March 2, 2010, on numerous occasions, Thelma Stern's son, Kenneth M. Stern, had smelled an unpleasant smell, while in Thelma Stern's room.  Said son believed such was caused by old plumbing in the RCFE building.

79.  As part of said Park Ventura Retirement Hotel's  duties as care custodian, of Thelma Stern, it had the duty to make sure that Thelma Stern 's room was clean and sanitary and did not have dirty diapers left in the waste baskets in her room.  As managing agents, or Park Ventura Retirement Hotel, Steven Krivitsky, Tatyana  Krivitsy, and Stephen Weisbarth all had the duty to make sure that said Park Ventura Retirement Hotel's duties were met, not breached.   On March 2, 2010 Kenneth M. Stern looked down into one of the waste baskets in Thelma Stern's room.  In such, was a dirty diaper.  This conduct took place, and was committed by unknown employees, while said employees were at work, at said RCFE, on duty and acting as a care giver or care custodian for Thelma Stern and was an outgrowth of the  employment, engendered by the employment and

SECOND AMENDED COMPLAINT

had a causal nexus to the work, in that, it was Park Ventura Retirement Hotel's duty to make sure Thelma Stern's room was clean and sanitary.

80. On March 2, 2010 defendants named in this Claim were told, by Kenneth M. Stern writing, to Stephen Weisbarth, that a dirty diaper had been left in a trash can in Thelma Stern's room. Kenneth Stern asked Stephen Weisbarth to see to it that such did not again happen. The waste basket was not a waste basket designed for dirty diapers. It was a common waste basket, open at the top.

81. On or about March 2 and 7, April 29 and 30, 2010, and on numerous occasions previous thereto Park Ventura Retirement Hotel and Woodland Park Retirement Hotel employees, left Thelma Stern's dirty diapers in waste baskets, in her room, causing stench and an unhealthy living environment. Thelma Stern's son, Kenneth M. Stern, observed the dirty diapers, in the wastebaskets in Thelma Stern's rooms, on said dates.

82. Defendants were requested to reasonably accommodate Thelma Stern, by not leaving dirty diapers in the waste basket(s), in Thelma Stern's room; as, due to Thelma Stern's disabling inability to get out of her wheel chair, by herself, inability to walk and lack of mobility, both in her wheel chair, in which she could

SECOND AMENDED COMPLAINT

80

not push herself, unless assisted, and inability to reach down and remove the

diapers, made it, as a practical matter, impossible for her to find and remove the

dirty diapers   herself.  Defendants were aware of these disabling conditions and

were specifically asked not to leave dirty diapers in the wastebasket(s) in Thelma

Stern's rooms.

83.  The accommodation sought was reasonable, in that, no person should

be required to live with dirty diapers in the wastebaskets in their rooms, so leaving

the diapers violated California laws concerning the cleanliness, sanitary and health

requirements, at RCFEs and would not be an undue burden to not so leave the

dirty diapers in the wastebasket's in Thelma Stern's room.

84.  The accommodation was necessary; as, due to the above described

disabilities, Thelma Stern was not physically capable of removing, and disposing

of, the dirty diapers, herself.

85.  This violated Thelma Stern's rights, under the American with

Disabilities Act, as incorporated into the Unruh Act, Civil Code section 51 (b) and

(f) in failing to keep Thelma Stern's room clean and healthy, in that, said

defendants' employees would continually leave Thelma Stern's dirty diapers in

SECOND AMENDED COMPLAINT

81

waste baskets, in her room, causing stench and an unhealthy living environment. She is entitled to statutory fees of $4,000.00 per incident for a total amount of no less than $16,000.00, plus interest on said amounts at the rate of 7% prior to judgement, pursuant to the Unruh Act. The conduct is also a violation of the American with Disabilities Act, entitling plaintiff to ADA general damages.

86. Defendants were able to engage in such misconduct, thereby intentionally taking advantage of the fact that, Thelma Stern was disabled and engaged in such conduct because Thelma Stern was disabled, and could not cure the problem, herself, which defendants knew. Defendants engaged in such acts with the motive of so conducting themselves because they knew Thelma Stern was a disabled person, who could not protect herself against defendants. Furthermore such acts were intentional, and also constituted ratification and authorization, in that, said defendants failed to conduct a proper investigation, determine which care giver(s) were leaving the dirty diapers in Thelma Stern's waste baskets, failed to advise the care givers not to leave dirty diapers in Thelma Stern's waste baskets and failed to discipline or correct the care giver(s) who were placing dirty diapers in Thelma Stern's waste baskets. As such, defendants deliberately allowed this

SECOND AMENDED COMPLAINT

82

wrongful conduct to continue.  Steven Krivitsky and Tatyana Krivitsky, from July 1, 2007 through April 30, 2010, as managers and/or administrators of Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, Susan Weisbarth , from approximately July 1, 2007 through approximately September 10, 2009, as administrator and manager  of said RCFE, and Stephen Weisbarth, from approximately September 10, 2009 through April 30, 2010, as Executive Director, assistant administrator and manager, had the responsibility to make sure Thelma Stern was properly cared for, including making sure that she did not have dirty diapers left in the waste baskets in her room, and also were responsible for the proper conduct, and had the authority and duty  to discipline or terminate employees, at Woodland Park Retirement Hotel and Park Ventura Retirement Hotel.

87.  Such failure to correct the problem constituted authorization and ratification, by defendants, of the conduct alleged herein.  Authorization and ratification took place, in that, defendants had no written training materials, or instruction, on how to properly dispose of diapers and engaged in the same conduct concerning other residents at Park Ventura Retirement Hotel and

SECOND AMENDED COMPLAINT

California Villa of Van Nuys.  Also, they ratification and authorization occurred by virtue of the fact that a continuing pattern of abuse and neglect was carried on by defendants at both Park Ventura Retirement Hotel and California Villa of Van Nuys, which was a signal to the employees at Park Ventura Retirement Hotel that the were free to abuse and neglect residents, threat.  Said continuing pattern showed acquiescence of defendants to whatever abuse and neglect would occur at Park Ventura Retirement Hotel.  This pattern of abuse and neglect included allowing residents at said RCFEs to have feces or dirty diapers permeate resident rooms, and, the hallways of the RCFEs, for unreasonable amounts of times.

88.  As a result of defendants' oppressive conduct, as described in this Claim, plaintiff is entitled punitive and exemplary damages, in a sum to be determined by a jury.  The conduct was oppressive, in that, allowing dirty diapers to be left in the wastebaskets in Thelma Stern's room, while refusing to take sufficient steps to cure the problem,  subjected her to cruel and unjust hardship in conscious disregard of that Thelma Stern's rights.  It was oppressive to subject Thelma Stern, who could not care for or protect herself, from dirty diapers being left in the waste baskets, in her room, to the indignity, offensive smells,

SECOND AMENDED COMPLAINT

84

unhealthy living conditions and affront to the respect deserving of an elder, particularly a disabled elder.

89.  It was also malicious, in that,  it was despicable and was done with a willfull and knowing disregard of the rights of Thelma Stern to live free of the stench and unhealthy environment of having dirty diapers in her room.

90.  As a result of defendants' conduct, herein, plaintiff is entitled to an award of attorneys fees.

SEVENTH CLAIM FOR ELDER ABUSE ACT BY PLAINTIFF AGAINST ALL DEFENDANTS EXCEPTING SUSAN WEISBARTH.

91.  Plaintiff hereby incorporates paragraphs 1  through 27 and 77 though 90 above, as though fully set forth herein, at this place.

92.  The conduct of leaving dirty diapers in the wastebaskets, in Thelma Stern's room, as aforesaid, constituted elder abuse pursuant to Welfare and Institutions Code section 15610.07, and Penal Code section 368[c], as Thelma Stern is over the age of 65 and had disabilities being her Alzheimer's Disease, being bed ridden, and confined to a wheelchair.  This was oppressive conduct, in that, it was despicable conduct that subjected plaintiff  to cruel and unjust hardship in conscious disregard of plaintiff's rights, in that, plaintiff was entitled to be free

SECOND AMENDED COMPLAINT

85

of having dirty diapers left in her room, which is offenses to the senses, unhealthy and unsanitary.  Allowing such condition to exist is in blatant disregard of public policy and the law.  Further, although complaints were frequently made about this condition, defendants failed and refused to take proper measures to stop the ongoing conduct.   It was malicious in that it was conduct which was  despicable conduct which was carried on by  defendants with a willful and conscious disregard of the rights of plaintiff, regarding her right to be free from living in an environment of the unhealthy and offensive situation of having dirty diapers left in her room.  As a result of defendants' conduct, herein, plaintiff is entitled to an award of attorneys fees.

EIGHTH CLAIM FOR DISABILITY DISCRIMINATION, ADA AND UNRUH ACT,  AGAINST ALL DEFENDANTS EXCEPTING THE WEISBARTHS AND KRIVITSKYS ARE NOT SUED FOR VIOLATION OF THE ADA.

93.  Plaintiff hereby incorporates paragraphs 1 through 27 as though fully set forth herein, at this place.

94.  As part of said Park Ventura Retirement Hotel's  duties as care custodian, of Thelma Stern, it had the duty to make sure that there was a sufficient

SECOND AMENDED COMPLAINT

number of care givers, during the early evening, after dinner, to make sure that the residents, including Thelma Stern, were properly cared for.   As part of said Park Ventura Retirement Hotel's  duties as care custodian, of Thelma Stern, it had the duty to make sure that Thelma Stern was cared for in a reasonable and timely fashion, which included the duty, during the early evening, after dinner, to change her diapers, get her ready for bed, including changing her clothes and helping her to brush her teeth, and to get her out of her wheelchair and into her bed.  As managing agents, or Park Ventura Retirement Hotel, Steven Krivitsky, Tatyana Krivitsy, Stephen Weisbarth and Susan Weisbarth all had the duty to make sure that said Park Ventura Retirement Hotel's duties were met, not breached.    On numerous occasions Thelma Stern's son, Kenneth M. Stern, complained to Susan Weisbarth and Stephen Weisbarth there were not enough care givers at Park Ventura Retirement Hotel, during the early evening, after dinner, to take care of Thelma Stern, in a timely manner.  This commenced no later than January 26, 2009.  When Tuscan Retreat, Inc. became involved in the operation of Park Ventura Retirement Hotel, there were less evening caregivers than prior thereto.

95.   Thelma Stern need a reasonable and necessary accommodation, of her

SECOND AMENDED COMPLAINT

disabilities, in that she needed to have her care givers take care of her, in the evening, by promptly, and within a reasonable amount of time.  This involved changing her diapers, getting her out of her wheelchair, and into bed, changing her into her bedtime clothes and getting her tooth brush, for her to brush her teeth.

96.  Such an accommodation was reasonable, in that, it was required by the laws concerning RCFEs and it was an obligation, undertaken by defendants, by Thelma Stern being a resident.

97.  Such accommodation was necessary because due to Thelma Stern's disabilities, she could not change her diapers, get her out of her wheelchair, and into bed, change into her bedtime clothes and get her tooth brush, for her to brush her teeth, without the help of her care givers.

98.  On numerous occasions, including on or about January 24, 2009 and at minimum two other occasions, prior to January 26, 2009, and on at least two nights a week commencing no later than January 1, 2010, and ending on April 29, 2010,  defendants were failed to have sufficient care givers staffed at night to take care of the residents at Park Ventura.  This resulted in Thelma Stern having to wait for unreasonable amounts of time to change her diapers, at times more than an

SECOND AMENDED COMPLAINT

hour, get her out of her wheelchair, and into bed, change her into her bedtime clothes and get her tooth brush, for her to brush her teeth.  As defendants had control over Thelma Stern, and the facts of which of each evenings, Thelma Stern was not cared for in a reasonable amount of time, are peculiarly within defendants' knowledge, Thelma Stern asserts that this happened every evening from January 1, 2010 through April 29, 2010, consisting of 122 evenings.  (This Claim is against Susan Weisbarth only as to acts and omissions occurring before September 10, 2009.

99. This violated Thelma Stern's disability rights, pursuant to the California Unruh Act, Civil Code sections 51 (b) (f), and 52 , her disabilities being her Alzheimer's Disease and her being bed ridden, made it impossible to care for herself. Plaintiff is entitled to a minimum of $4,000.00 statutory damages, per incident, for a total of not less than $488,000, plus interest on said amounts at the rate of 7% prior to judgement.  The conduct is also a violation of the American with Disabilities Act, entitling plaintiff  to ADA general damages.

100.   Furthermore, defendants named in this Claim, including Tuscan Retreat, Inc., Steven Krivitsky, Tatyana Krivitsy, Susan Weisbarth and Stephen

SECOND AMENDED COMPLAINT

Weisbarth, had knowledge of all material facts concerning the lack of sufficient

care givers, in the evening, prior to institution of the lawsuit and are defending

such acts.  Furthermore, Steven Krivitsky and Tatyana Krivitsky have state there

was no misconduct, in that, there were sufficient caregivers during the evening,

Such denial of misconduct, intent to abide such act, and interposing a defense to

the allegations, constituted ratification.  Steven Krivitsky and Tatyana Krivitsky,

from July 1, 2007 through April 30, 2010, as managers and/or administrators of

Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, Susan

Weisbarth , from approximately July 1, 2007 through approximately September

10, 2009, as administrator and manager  of said RCFE, and Stephen Weisbarth,

from approximately September 10, 2009 through April 30, 2010, as Executive

Director, assistant administrator and manager, had the responsibility to make sure

Thelma Stern was properly cared for, including making sure there were sufficient

care givers, during the evening, to take care of her in a reasonably prompt manner,

and also were responsible for budgeting and scheduling a sufficient amount of

care givers, to properly care for plaintiff

     101.  Furthermore Stephen Weisbarth and Tatyana Krivitsky concealed the

SECOND AMENDED COMPLAINT

misconduct by misrepresenting facts, concerning such, to the Department of Social Services.  Kenneth M. Stern complained, to that government agency, about the lack of sufficient care givers, during the evening, which resulted in Thelma Stern not being properly care for. Stephen Weisbarth and Tatyana Krivitsky were aware that the complaints related to the early evening, wherein, it would take excess amounts of time, due to a lack of sufficient caregivers, to change her diapers, put her in bed and get her ready to go to sleep.  However, in acts of deception, Steven Weisbarth and Tatyana Krivitsky, discussed the graveyard shift, which is approximately 11:00 p.m to 7:00 a.m, claiming that because during that time almost all residents are in bed and asleep, there was no need for more than one or two caregivers .

102.  As a result of defendants' oppressive and malicious conduct, as described in this Claim, plaintiff is entitled punitive and exemplary damages, in a sum to be determined by a jury.

103.  The conduct was oppressive, in that, requiring Thelma Stern to remain in her wheelchair, without her diapers being changed, or getting ready for bed, subjected her to cruel and unjust hardship in conscious disregard of that Thelma

SECOND AMENDED COMPLAINT

Stern's rights, in that, she was an elderly, disabled woman, who was uncomfortable having been in her wheelchair all day, who wanted to be able to get in bed, be comfortable and relax for the evening..

104.  The conduct was malicious because it was despicable and was done with a will and knowing disregard of the rights of Thelma Stern, in that, defendants have decided that their profits are more important than the welfare of their residents, including Thelma Stern. Such conduct would be looked down on and despised by reasonable people.  Further, defendants sought to maximize their profits over the well being and proper care of Thelma Stern, and the other residents at Park Ventura Retirement Hotel.

105.  As a result of defendants' conduct, herein, plaintiff is entitled to an award of attorneys fees.

NINTH CLAIM FOR ELDER ABUSE AGAINST ALL DEFENDANTS.

106.  Plaintiff hereby incorporates paragraphs 1 through 25 and 94 through 105  above, as though fully set forth herein, at this place.  Specifically As part of said Park Ventura Retirement Hotel's  duties as care custodian, of Thelma Stern, it had the duty to make sure that there was a sufficient number of care givers, during

SECOND AMENDED COMPLAINT

the early evening, after dinner, to make sure that the residents, including Thelma Stern, were properly cared for.   As part of said Park Ventura Retirement Hotel's duties as care custodian, of Thelma Stern, it had the duty to make sure that Thelma Stern was cared for in a reasonable and timely fashion, which included the duty, during the early evening, after dinner, to change her diapers, get her ready for bed, including changing her clothes and helping her to brush her teeth, and to get her out of her wheelchair and into her bed.  As managing agents, or Park Ventura Retirement Hotel, Steven Krivitsky, Tatyana  Krivitsy, Stephen Weisbarth and Susan Weisbarth all had the duty to make sure that said Park Ventura Retirement Hotel's duties were met, not breached.    On numerous occasions Thelma Stern's son, Kenneth M. Stern, complained to Susan Weisbarth and Stephen Weisbarth there were not enough care givers at Park Ventura Retirement Hotel, during the early evening, after dinner, to take care of Thelma Stern, in a timely manner.  This commenced no later than January 26, 2009.  When Tuscan Retreat, Inc. became involved in the operation of Park Ventura Retirement Hotel, there were less evening caregivers than prior thereto.  On numerous occasions, including on or about January 24, 2009 and at minimum two other occasions, prior to January 26,

SECOND AMENDED COMPLAINT

93

2009, and on at least two nights a week commencing no later than January 1, 2010, and ending on April 29, 2010,  defendants were failed to have sufficient care givers staffed at night to take care of the residents at Park Ventura.  This resulted in Thelma Stern having to wait for unreasonable amounts of time to change her diapers, at times more than an hour, get her out of her wheelchair, and into bed, change her into her bedtime clothes and get her tooth brush, for her to brush her teeth.  As defendants had control over Thelma Stern, and the facts of which of each evenings, Thelma Stern was not cared for in a reasonable amount of time, are peculiarly within defendants' knowledge, Thelma Stern asserts that this happened every evening from January 1, 2010 through April 29, 2010, consisting of 122 evenings.  (This Claim is against Susan Weisbarth only as to acts and omissions occurring before September 10, 2009.)

107.  This constituted elder abuse pursuant to Welfare and Institutions Code section 15610.07, and Penal Code section 368 [c], as Thelma Stern is over 65 and the disabilities being her Alzheimer's Disease and her being bed ridden, and confined to a wheelchair.   The conduct was oppressive, in that, requiring Thelma Stern to remain in her wheelchair, without her diapers being changed, or getting

SECOND AMENDED COMPLAINT

94

ready for bed, subjected her to cruel and unjust hardship in conscious disregard of that Thelma Stern's rights, in that, she was an elderly, disabled woman, who was uncomfortable having been in her wheelchair all day, who wanted to be able to get in bed, be comfortable and relax for the evening.  The conduct was malicious because it was despicable and was done with a will and knowing disregard of the rights of Thelma Stern, in that, defendants have decided that their profits are more important than the welfare of their residents, including Thelma Stern. Such conduct would be looked down on and despised by reasonable people.  Further, defendants sought to maximize their profits over the well being and proper care of Thelma Stern, and the other residents at Park Ventura Retirement Hotel. As a result of defendants' conduct, herein, plaintiff is entitled to an award of attorneys fees.

108.  Plaintiff is entitled to damages for emotional distress, and mental suffering.

TENTH CLAIM FOR DISABILITY DISCRIMINATION, ADA AND UNRUH ACT, AGAINST ALL DEFENDANTS EXCEPTING SUSAN WEISBARTH AND EXCEPTING THE WEISBARTHS AND KRIVITSKYS ARE NOT SUED FOR VIOLATION OF THE ADA.

109.  Plaintiff hereby incorporates paragraphs 1  through 27  above, as

SECOND AMENDED COMPLAINT

95

1  though fully set forth herein, at this place.

2      110.  Approximately March, 1, 2010 Thelma Stern's dentist told Kenneth
3
4  M. Stern that Thelma Stern should brush her teeth after every meal.

5      111.  As part of said Park Ventura Retirement Hotel's  duties as care
6
7  custodian, of Thelma Stern, it had the duty to make sure that Thelma Stern's dental
8  needs, in aiding her to brush her teeth,  were properly cared for.  As managing
9
10 agents, or Park Ventura Retirement Hotel, Steven Krivitsky, Tatyana  Krivitsy,
11 and Stephen Weisbarth all had the duty to make sure that said Park Ventura
12 Retirement Hotel's duties were met, not breached.  On or about  March 1, 2010,
13
14 and numerous times thereafter, Kenneth M. Stern told Stephen Weisbarth, that
15 Thelma Stern's dentist wanted Thelma Stern to brush her teeth, after every meal;
16 and, Thelma Stern should be brought back to her room, after every meal, to brush
17
18 her teeth.

19     112.  Defendants were requested to reasonably accommodate Thelma Stern,
20
21 by having her brush her teeth after every meal; as, due to Thelma Stern's disabling
22 inability to get out of her wheel chair.  The accommodation sought was
23
24 reasonable, in that, brushing one's teeth, especially when one is elderly and trying
25

26 _____
27 SECOND AMENDED COMPLAINT
28                                    96

to keep from losing one's teeth, is a reasonable daily activity. Help with daily activities of residents of RCFEs is required by law.

113.   The accommodation was necessary; as, due to Thelma Stern's Alzheimer's Disease, would not remember that she was supposed to brush her teeth after every meal.  Further,   as, due to Thelma Stern's disabling inability lack of mobility, both in her wheel chair, in which she could not push herself, except to a limited extent, unless assisted, Thelma Stern was unable to, unassisted, go the her room .  Defendants were aware of these disabling conditions.

114.   Stephen Weisbarth refused to have Thelma Stern's care givers to comply with such.  This was an outgrowth of the employment, engendered by the employment and had a causal nexus to the work, in that, it was Park Ventura Retirement Hotel's duty to make sure Thelma Stern day to day dental care was taken care of.

115.   This violated Thelma Stern's rights, under the American with Disabilities Act, as incorporated into the Unruh Act, Civil Code section 51 (b) and (f) in failing to aid Thelma Stern in brushing her teeth after every meal.

116.   Defendants were able to engage in such misconduct, thereby

SECOND AMENDED COMPLAINT

97

intentionally taking advantage of the fact that, Thelma Stern was disabled and engaged in such conduct because Thelma Stern was disabled, and could not cure the problem, herself, which defendants knew.   Defendants engaged in such acts with the motive of so conducting themselves because they knew Thelma Stern was a disabled person, who could  not protect herself against defendants.  Furthermore such acts were intentional, and also constituted ratification and authorization, in that, said defendants, through their agent, Stephen Weisbarth, refused to so Thelma Stern aided  As such, defendants deliberately allowed this wrongful conduct to continue.

117.  As defendants had control over Thelma Stern, and the facts of which meals Thelma Stern was, and was not, helped to brush her teeth, are peculiarly within defendants' knowledge, Thelma Stern alleges for each day, commencing on or about March, 1, 2010, Thelma Stern was not aided to brush her teeth, as aforesaid, and therefore did not brush her teeth, each day, after breakfast and after lunch, through and including April 29, 2010.

118.  This violated Thelma Stern's disability rights, pursuant to the California Unruh Act, Civil Code sections 51 (b) and (f), and 52, her disabilities

SECOND AMENDED COMPLAINT

98

being her Alzheimer's Disease, inability to remember to brush her teeth after every meal and inability to wheel herself back to her room, to brush her teeth is entitled to statutory fees of $4,000.00 per incident for a total amount of no less than $480,000.00, plus interest on said amounts at the rate of 7% prior to judgement. The conduct is also a violation of the American with Disabilities Act, entitling plaintiff to ADA general damages.

119.   Such failure to correct the problem constituted authorization and ratification, by defendants, of the conduct alleged herein. Ratification and authorization occurred by virtue of the fact that a continuing pattern of abuse and neglect was carried on by defendants at both Park Ventura Retirement Hotel and California Villa of Van Nuys, which was a signal to the employees at Park Ventura Retirement Hotel that the were free to abuse and neglect residents, threat.  Said continuing pattern showed acquiescence of defendants to whatever abuse and neglect would occur at Park Ventura Retirement Hotel.  Steven Krivitsky and Tatyana Krivitsky, from July 1, 2007 through April 30, 2010, as managers and/or administrators of Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, Susan Weisbarth , from approximately July 1, 2007

SECOND AMENDED COMPLAINT

through approximately September 10, 2009, as administrator and manager of said RCFE, and Stephen Weisbarth, from approximately September 10, 2009 through April 30, 2010, as Executive Director, assistant administrator and manager, had the responsibility to make sure Thelma Stern was properly cared for, including making sure she brushed her teeth after every meal.

120.  As a result of defendants' oppressive conduct, as described in this Claim, Thelma Stern is entitled punitive and exemplary damages, in a sum to be determined by a jury.   This conduct was oppressive, in that, Thelma Stern has a right to have her care custodians help her in brushing her teeth, and refusal of such constituted depravation, by a care custodian, of services necessary.     It also violated Health and Safety Code section 15619.312 in that, if failed to assist Thelma Stern with the instrumental activities of daily living which met Thelma Stern's needs.  All stated statutes and regulations are promulgated to protect elders against abuse.

121.  This conduct was malicious, in that, it was intentional conduct which was intended to cause Thelma Stern the injury of not preserving and protecting her elderly teeth.  It was also malicious, in that,  it was despicable and was done with a

SECOND AMENDED COMPLAINT

will and knowing disregard of the rights of Thelma Stern, in that such conduct would be looked down on and despised by reasonable people.  (See also the facts in the preceding paragraph.)

122.  As a result of defendants' conduct, herein, plaintiff is entitled to an award of attorneys fees.

ELEVENTH CLAIM FOR DISABILITY DISCRIMINATION, ADA AND UNRUH ACT AGAINST ALL DEFENDANTS EXCEPTING THE WEISBARTHS AND KRIVITSKYS ARE NOT SUED FOR VIOLATION OF THE ADA.

123.  Plaintiff hereby incorporates paragraphs 1  through 27  above, as though fully set forth herein, at this place.

124.  Woodland Park Retirement Hotel and Park Ventura Retirement Hotel had a duty, to Thelma Stern, to care for her dietary needs, in a healthful manner. As managing agents, officers and directors of  Woodland Park Retirement Hotel and Park Ventura Retirement Hotel, Steven Krivitsky, Tatyana  Krivitsy, and Stephen Weisbarth as managing agent, Executive Director and Assistant Administrator, and Susan Weisbarth, as managing agent and administrator all had the duty to make sure that said Park Ventura Retirement Hotel's duties were met, not breached. During all times that Thelma Stern lived at Woodland Park

SECOND AMENDED COMPLAINT

Retirement Hotel/Park Ventura Retirement Hotel, she was an extremely obese woman.  Such had a disabling effect upon her health and vitality.

125.  In 2003 and 2004 Thelma Stern's medical evaluation notes, at Woodland Park Retirement Hotel, noted that her intake of sugar should be limited. On January 28, 2003 Kenneth M. Stern gave Susan Weisbarth a letter stating the not only should Thelma Stern not be given sugar, but, she should not be given foods that would quickly break down into sugar.  Such foods were described in the letter.  Also, on October 1, 2007 Susan Weisbarth was told that Woodland Park employee Esperanza Torres had been giving Thelma Stern sugary foods, which she should not have been, including giving Thelma Stern a second sugary dessert, after being told, by Kenneth Stern, not to give her the second dessert.  Susan Weisbarth falsely claimed the desserts were sugar free; although, she was not even present when the sugary foods were given to Thelma Stern.  Kenneth M. Stern complained, to Susan Weisbarth, on many occasions about Thelma Stern being given excessive amounts of sugar.

126.  Also, approximately October 1, 2007 Kenneth M. Stern told Esperanza Torres she should not give Thelma Stern sugary goods, such as ice cream, candy,

SECOND AMENDED COMPLAINT

102

cake and cookies.  She agreed, she would not give Thelma Stern such sugary foods.

127.  There also continued a pattern of giving Thelma Stern sugary desserts at meal times.  Sugar free ice cream was only given, at dinner, twice a week; although, it was believed that it was kept in said RCFEs freezers, at all times.  The only other sugar free dessert was gelatine, which Thelma Stern did not like.  Susan Weisbarth was told this and said that Thelma Stern would be served what served to everyone else.

128.  Defendants were requested, to reasonably accommodate Thelma Stern, as aforesaid, not giving Thelma Stern sugary foods.   The accommodation sought was reasonable, in that, sugar is unhealthy, particularly for a person like Thelma Stern who was obese, addicted to unhealthy foods and whom has been evaluated by the RCFE as being a person whose sugar intake should be severely limited. Help with daily activities of residents of RCFEs is required by law, which includes keeping sugar away from Thelma Stern.  It was also reasonable, in that, without defendant's help, Thelma Stern would have no way of obtaining such sugary foods, by herself, due to her Alzheimer's Disease, she would not be able to

SECOND AMENDED COMPLAINT

remember where to obtain and lack of mobility, she would not be able to take herself to the place to obtain said foods, even if she could remember where she could find such.

129.  The accommodation was necessary; as, due to Thelma Stern's addiction to unhealthy foods, contribution to obesity and health problems created from eating such.  Also, defendants were aware of these disabling conditions.

<u>Dinner Counts.</u>

203.  Susan Weisbarth is sued, upon these counts, only for dates through and including September 10, 2009.  Stephen Weisbarth is sued upon these counts only for dates from September 11, 2009 and thereafter.

130.  Thelma Stern believes that, from at minimum, October 1, 2007 through April 29, 2010 Thelma Stern was given a sugary dessert at both lunch and dinner, five times a week, for a total of approximately 1,296 times.  This conduct took place while said employees were at work, at said RCFE, on duty and acting as a care giver or care custodian for Thelma Stern  and was an outgrowth of the employment, engendered by the employment and had a causal nexus to the work, in that, it was Woodland Park Retirement Hotel and Park Ventura Retirement

SECOND AMENDED COMPLAINT

104

Hotel's duty to provide Thelma Stern with nutritious and healthy foods.

131.  This violated Thelma Stern's rights, under the American with Disabilities Act, as incorporated into the Unruh Act, Civil Code section 51(b) and (f) in failing to aid plaintiff from being poisoned with sugar.  Plaintiff is entitled to statutory fees of $4,000.00 per incident for a total amount of no less than $5,184,000.00, plus interest on said amounts at the rate of 7% prior to judgement.  The conduct is also a violation of the American with Disabilities Act, entitling plaintiff  to ADA general damages.

Esperanza Torres giving plaintiff ice cream and candy counts.

132.  Susan Weisbarth is sued, upon these counts, only for dates through and including September 10, 2009.  Stephen Weisbarth is sued upon these counts only for dates from September 11, 2009 and thereafter.

133.  Prior to April 1, 2010 Thelma Stern had been bringing Thelma Stern sugar free chocolate.  Such was kept in the refrigerator in her room.  All of Thelma Stern's care givers were told about the sugar free chocolate, and, they could give such to Thelma Stern.  This included Thelma Stern's care giver Esperanza Torres.

134.  On approximately April 1, 2010 Kenneth M. Stern discovered, from

SECOND AMENDED COMPLAINT

Sherline Miller, that Esperanza Torres had been giving, on a daily basis, Thelma Stern either chocolate Hershey Bars (not sugar free) or Fudgsicles, (not sugar free) which Esperanza Torres was purchasing, with money from Thelma Stern's money in the RCFE's trust fund, at the store at the RCFE.  Sherline Miller was the director activities and an assistant administrator at Woodland Park Retirement Hotel/Park Ventura Retirement Hotel.  Sherline Miller stated she would tell Esperanza Torres not to give Thelma Stern such sugary items.

135.   Thereafter Kenneth M. Stern found Thelma Stern in her room, with a half eaten Hershey Bar.  It was determined that it was given, to her, by Esperanza Torres.

136  On or about April 16, 2010 Thelma Stern informed Stephen Weisbarth of the information stated in the preceding two paragraphs.  This, by Esperanza Torres took place while said employees were at work, at said RCFE, on duty and acting as a care giver or care custodian for Thelma Stern  and was an outgrowth of the  employment, engendered by the employment and had a causal nexus to the work, in that, it was Woodland Park Retirement Hotel and Park Ventura Retirement Hotel's duty to provide Thelma Stern with healthy, nutritious foods.

SECOND AMENDED COMPLAINT

137.  As defendants had control over Thelma Stern, and the facts of which of each day, Thelma Stern was given these sugary treat, are peculiarly within defendants' knowledge, Thelma Stern asserts that this happened every day from at least October 1, 2007, at least one time per day for a total of 944 times.  This violated Thelma Stern's rights, under the American with Disabilities Act, as incorporated into the Unruh Act, Civil Code section 51 (b) and  (f) in failing to aid plaintiff from being poisoned with sugar.  Plaintiff is entitled to statutory fees of $4,000.00 per incident for a total amount of no less than $3,776,000.00, plus interest on said amounts at the rate of 7% prior to judgement. The conduct is also a violation of the American with Disabilities Act, entitling plaintiff  to ADA general damages.

138.  Defendants were able to engage in such misconduct, thereby intentionally taking advantage of the fact that, Thelma Stern was disabled and engaged in such conduct because Thelma Stern was disabled, and could not cure the problem, herself, which defendants knew.   Defendants engaged in such acts with the motive of so conducting themselves because they knew Thelma Stern was a disabled person, who could  not protect herself against defendants.  Furthermore

SECOND AMENDED COMPLAINT

such acts were intentional, and also constituted ratification and authorization, in that, said defendants, through their agents, Susan Weisbarth and Stephen Weisbarth, refused to end the practice of giving Thelma Stern sugary items, harmful to her health.

139.  Such failure to correct the problem constituted authorization and ratification, by defendants, of the conduct alleged herein. Ratification and authorization occurred by virtue of the fact that a continuing pattern of abuse and neglect was carried on by defendants at both Park Ventura Retirement Hotel and California Villa of Van Nuys, which was a signal to the employees at Park Ventura Retirement Hotel that the were free to abuse and neglect residents, threat.  Said continuing pattern showed acquiescence of defendants to whatever abuse and neglect would occur at Park Ventura Retirement Hotel.

140.  As a result of defendants' oppressive conduct, as described in this Claim, plaintiff is entitled punitive and exemplary damages, in a sum to be determined by a jury.   This conduct was oppressive, in that, Thelma Stern has a right to have her care custodians help her in combating the unhealthy practice of having her eat unhealthy sugary foods.  Were it not for defendants enabling

SECOND AMENDED COMPLAINT

Thelma Stern, to be able to obtain and eat such foods, Thelma Stern would not be able to obtain such.  It also violated Health and Safety Code section 15619.312 in that, if failed to assist Thelma Stern with the instrumental activities of daily living which met Thelma Stern's needs.   All stated statutes and regulations are promulgated to protect elders against abuse.

141.  This conduct was malicious, in that, it was intentional conduct which was intended to cause Thelma Stern the injury of not preserving and protecting her elderly teeth.  It was also malicious, in that,  it was despicable and was done with a will and knowing disregard of the rights of Thelma Stern, in that such conduct would be looked down on and despised by reasonable people.  This is the equivalent of giving a heroin addict heroin or an alcohol, alcoholic beverages. (See also the facts in the preceding paragraph.)

142.  As a result of defendants' conduct, herein, plaintiff is entitled to an award of attorneys fees.

TWELFTH CLAIM FOR CONSTRUCTIVE EVICTION BY PLAINTIFF AGAINST ALL DEFENDANTS, EXCEPTING SUSAN WEISBARTH.

143.  Plaintiff hereby incorporates paragraphs 1 through 27 as though fully set forth herein, at this place.

SECOND AMENDED COMPLAINT

109

144.  From approximately February 2002 or 2003 Thelma Stern was in peaceable possession , as a tenant, of room 102 at 21200 Ventura Blvd, Woodland Hills, Ca. 91364.  In 2010, Thelma Stern was a tenant of all corporate and limited liability entities, who are named as defendants herein, as those entities constituted a joint enterprise.  Furthermore, Thelma Stern was a tenant of Tuscan Retreat, Inc., Woodland Park Investment Co., L.L.C. and Woodland Hills Retirement Co, Inc. As part of said RCFE's  duties as care custodian, of Thelma Stern, it had the duty to make sure that Thelma Stern was properly cared for in her health, in her needs as a disabled and elderly persons.  As managing agents, or Park Ventura Retirement Hotel, Steven Krivitsky, Tatyana  Krivitsy, and Stephen Weisbarth all had the duty to make sure that said Park Ventura Retirement Hotel's duties were met, not breached.

145.  Due to the intolerable conditions and conduct of defendants employees and managing agents, including Stephen Weisbarth's hostility directed at complaints being made about Thelma Stern's care, his attitude that there were no problems, and his refusal to attempt to solve the problems, at Park Ventura Retirement Hotel, as described herein, not having enough caregivers during the

SECOND AMENDED COMPLAINT

evening, to take care of Thelma Stern in a reasonably prompt manner, and the failure of defendants to provide adequate care giver staffing, and the discovery that Thelma Stern was being given Fudgecicles and Hershey Bars, by Esperanza Torres, although she was told on numerous occasions to not so do, Thelma Stern was compelled to move out of the premises.  Those conditions included he unsanitary, unpleasant and unhealthful leaving of dirty diapers in Thelma Stern's room.  This leaving of dirty diapers, and failure to remove such, from Thelma Stern's room were acts or omissions of defendants, and a failure to have adequate care giver staffing to adequately care for Thelma Stern, and a disturbance and interference with tenant's Thelma Stern's possession by which rendered the premises, or a substantial portion thereof, unfit for the purposes for which they were leased, being a home for Thelma Stern wherein she would be properly cared for by her care custodians, and had the effect of depriving Thelma Stern for a substantial period of time of the beneficial enjoyment or use of the premises. These acts and omissions were an outgrowth of the  employment, engendered by the employment and had a causal nexus to the work, in that, the wrongful acts and omissions, alleged, all pertain to Thelma Stern's care, as a resident, elder and

SECOND AMENDED COMPLAINT

111

disabled person, at Park Ventura Retirement Hotel.

146.   These acts and omissions deprived Thelma Stern of the beneficial enjoyment to the premises, requiring her to terminate her tenancy.

147.   Thelma Stern vacated the premises on April 30, 2010.   This constituted a reasonable amount of time, under the circumstances, for the following reasons:

A.   Thelma Stern was, as of 2005, wheel chair bound.   She also suffered from dementia.   As such, her son, Kenneth M. Stern, was her family member who looked after her, in terms of her care at Woodland Park Retirement Hotel/Park Ventura Retirement Hotel.   When problems would arise, Kenneth Stern would attempt to resolve the problems, some of which are alleged herein, at said RCFE. Some problems were resolved.   Some problems continued.

B.    In September, 2009 Stephen Weisbarth was made the "Executive Director" of Park Ventura and represented himself to be the administrator.    He was a manner in running the RCFE, and in particular, he was in the person who interacted with resident and resident families concerning problems, at the RCFE, which arose, and needed to be corrected.   Before March or May, 2009, Stephen

SECOND AMENDED COMPLAINT

Weisbarth had never even worked at at RCFE.   At that time, he was made the administrator at California Villa of Van Nuys, which was, in part, beneficially owned by Steven Krivitsky and Tatyana Krivitsky.  When the Department of Social Services, the licensing, regulatory and oversight body for RCFE's learned that Stephen Weisbarth was not qualified to have an administrators license, D.P.S.S. told the Krivitsky's that Stephen Weisbarth could not be the administrator at California Villa of Van Nuys.  So, in September, 2009. he was sent to replace his wife, Susan Weisbarth, who was the administrator at Park Ventura, and became the "Executive Director", at Park Ventura Retirement Hotel, with Steven Krivitsky becoming the administrator.  Susan Weisbarth was transferred to California Villa of Van Nuys, to be its administrator.  As such, when, in September, 2009, when Stephen Weisbarth was made a primary person to handle resident problems, he has barely a few months of having worked at an RCFE.  Kenneth Stern learned that Stephen Weisbarth had assumed the role, at Park Ventura Retirment Hotel, of the manager dealing with resident problems when Kenneth Stern sent Susan Weisbarth an email concerning the problem, as previously mentioned, with "Douglas" battering Thelma Stern, Kenneth Stern

SECOND AMENDED COMPLAINT

113

received back an email, from Stephen Weisbarth, stating that he had taken over for his wife, Susan Weisbarth.  As such, Kenneth Stern and Stephen Weisbarth worked together, towards trying to resolve the problem with Douglas.

C.  On approximately October 19, 2009, Kenneth Stern underwent hip replacement surgery.  This was the second surgery he underwent that year.  In June of July of that year he had hernia surgery.  After the hip replacement operation, Kenneth Stern was in the hospital for about four days and in a rehabilitation center for another two weeks.  Kenneth Stern was not allowed to drive for six weeks, from the date of the hip replacement surgery; although, he did visit his mother, at Park Ventura Retirement Hotel, by taking Access Paratransit, a transportation service for disabled persons.  During this six week period that Kenneth M. Stern could not drive, which ended approximately the first week in December, 2009, he was the only person available, willing and able to look after his mother, in terms of attempting to make sure she was properly cared for.  There were problems even during this period, for example continuing problems with Thelma Stern not having her telephone and not having enough care givers.  During this recover period, Kenneth Stern could not go to other assisted living home to check them out.

SECOND AMENDED COMPLAINT

D.  Under the management of Stephen Weisbarth, from approximately December, 2009, the care at Park Ventura started to deteriorate.  The problems with not having enough care givers increased.  Kenneth Stern tried to work with Stephen Weisbarth to correct his problem, to no avail.    The problems with dirty diapers being left in the wastebaskets, in Thelma Stern's room was discovered.  Kenneth Stern tried to work with Stephen Weisbarth to correct this problem, to no avail.  Stephen Weisbarth was informed that Thelma Stern's dentist wanted her to brush her teeth after ever meal.  Stephen Weisbarth indicated, in essence, that Thelma Stern would not be aided in such.

E.  Further on or about March 5, 2010 , Stephen Weisbarth's communicated to Kenneth Stern, an attitude that he was tired of hearing Kenneth Stern's complaints about his mother's care, that as far as Stephen Weisbarth was concerned there was nothing wrong with Thelma Stern's care, and, the problem was Kenneth Stern complaining about the care, not the care itself.  This shift in attitude, of Stephen Weisbarth, greatly concerned Kenneth Stern.  At that point, because of Stephen Weisbarth's attitude, Kenneth Stern formed the belief that the tipping point of having Thelma Stern remain at Park Ventura Retirement Hotel,

SECOND AMENDED COMPLAINT

115

and her moving to another assisted living home, had probably been reached. Furthermore, it was discovered that one of the care givers, at Park Ventura Retirement Hotel, Esperanza Torres, was buying Thelma Stern sugary, unhealthy chocolate bars or Fudgcycles every day.  This was despite the RCFE that they were not to be giving Thelma Stern sugary treats, with Eperanza Torres also being specifically told such.  This was also despite the fact that, as the RCFE knew, Kenneth Stern kept sugar free chocolate stocked in the refrigerator in Thelma Stern's room.

F.  Thelma Stern and Kenneth Stern were thus, presented with two negative alternatives.  It was a darned if you do, darned if you don't situation.

G.  The negatives of her staying at Park Ventura Retirement Hotel were the problems that have been discussed in this Complaint and claim, including Stephen Weisbarth's conduct, which engendered a lack of trust, by Kenneth Stern, that Stephen Weisbarth could, and would, work to resolve problems with Thelma Stern's care, at Park Ventura Retirement Hotel.

H.  However, there were also negatives to her moving.  Woodland Park Retirement Hotel/Park Ventura Retirement Hotel, in early 2010,  had been Thelma

SECOND AMENDED COMPLAINT

Stern's home for about nine years.  She had many friends there.  What was important about these friendships, and other residents that Thelma Stern could interact with, at Park Ventura Retirement Hotel, was that most of them did not have dementia.  While Thelma Stern had dementia, which caused problems with her short term memory, she was in other respects high functioning, that is, she could carry on normal, rational, intelligent conversations with others.  This was very important to her, a social person, and important to help delay the progression of her dementia.   Moving would mean she would have to start her life all over again, make new friends, and, become accustomed to and acquainted with her new surroundings and care givers.  This is not easy for a person with short term memory problems.  As such, she really did not want to move.

I.  There is a further problem with moving a person with dementia.  They cannot move into an assisted living home unless the assisted living home is licensed to care for persons with dementia.  A board and care or living in a private home, with Kenneth Stern, were not good choices for Thelma Stern.  Neither of those two alternatives would have provided Thelma Stern with the social activities that were important of a social person like Thelma Stern.  As such, Kenneth Stern

SECOND AMENDED COMPLAINT

117

needed to find an appropriate assisted living home, licensed for residents with dementia, for Thelma Stern. There is a scarcity of such assisted living homes, particularly that would meet the needed requirements. One particular problem with finding such an appropriate home, is, most have dementia residents who, the vast majority of which, were much lower mentally functioning than Thelma Stern. This could (and did) create a problem of Thelma Stern not having an adequate number of resident to make friends with. This would be bad for Thelma Stern, as maintaining high level of communication is important to stave off the progressions of dementia, and, socially, because Thelma Stern loved to make, and have, friends. Also, a person cannot move into an assisted living home, without getting a current medical report, which can take two weeks. The assisted living home for Thelma Stern, for her to move to, had to be geographically near Kenneth Stern's home or office. It had to be a place where the care was good. It preferably had to be a place where Kenneth Stern could wheel Thelma Stern to such as restaurants.

    J. In about March or April, 2010, after Kenneth Stern discussed, with Thelma Stern reasons to stay at Park Ventura Retirement Hotel, and reasons to move, it was mutually agreed that she would move.

SECOND AMENDED COMPLAINT

K.  Kenneth Stern started looking at various geographically appropriate assisted living homes, in the proper geographical area.  There were only a few that were realistic for a move by Thelma Stern.  Some of the places looked at turned out to be assisted living homes that were not licensed to accept persons with dementia.  In about April, 2010 a social worker who worked in the gerontology department at Kaiser Permanente, in Woodland Hills, Ca., suggested, to Kenneth Stern, that he look at Pacifica Senior Living, Northridge.  Kenneth Stern did so and determined that such would likely be the best place to which Thelma Stern should move.  Kenneth Stern took Thelma Stern to Pacifica Senior Living, Northridge, to check it out.  She agreed that moving to that assisted living home would be acceptable, to her.  As such, on April 30, 2010, Thelma Stern moved out of Park Ventura Retirement Hotel.  Problems with that RCFE continued to the very end.  A dirty diaper was left in a wastebasket in Thelma Stern's room both the night before she moved and the morning she moved.   Further, problems with Stephen Weisbath continued to the very end.  Without permission to enter Thelma Stern's room, as Kenneth Stern was packing Thelma Stern's belongings and getting her ready for the move, Stephen Weisbarth entered Thelma Stern's room

SECOND AMENDED COMPLAINT

119

and, in a maniacal rage, started yelling at Thelma Stern that she could not move out of Park Ventura Retirement Hotel.  It was only after repeated demands, by Kenneth Stern, that Stephen Weisbarth exited the room, that he eventually left the room.  He then stood just outside the door to Thelma Stern's room, continuing to yell that Thelma Stern could not move out of Park Ventura Retirement Hotel.  Fortunately, at this time, Thelma Stern's ride, to Pacifica Senior Living, Northridge arrived, and took Thelma Stern to her new home.

148.  Furthermore, defendants named in this Claim, including Tuscan Retreat, Inc., Steven Krivitsky, Tatyana Krivitsy, Susan Weisbarth and Stephen Weisbarth, had knowledge of all material facts concerning the deprivation of Thelma Stern's telephone, lack of adequate caregivers, problems concerning dirty diapers being left in the waste baskets in Thelma Stern's room, the denial, by Stephen Weisbarth, that there were any problems with Thelma Stern's care, his refusal to take adequate steps to solve the problems, indicated by Kenneth M. Stern, giving Thelma Stern too much sugar, prior to institution of the lawsuit and are defending such acts. Furthermore, Tuscan Retreat, Inc., Steven Krivitsky, Tatyana Krivitsy, have denied these were problems.

SECOND AMENDED COMPLAINT

149.  As legal cause of defendants' conduct, Thelma Stern was injured by being required to pay higher rents and fees to the premises to which she relocated, in the approximate amount of $2,000. per month and an approximate one time $3,100 move in fee.  This totaled approximately $91,100.00.

150.  As legal cause of defendants' conduct, Thelma Stern was injured by being required to pay higher rents and fees to the premises to which she relocated.

151.  As legal cause of defendants' conduct, Thelma Stern was injured by being required to move to a new location which was an environment, due to other tenants' Alzheimer's Disease, and because of Thelma Stern's own Alzheimer's disease, made it difficult to make new senior friends and to lose old friends, who were residents at Park Ventura Retirement Hotel.

THIRTEENTH CLAIM FOR ELDER ABUSE, AGAINST ALL DEFENDANTS EXCEPTING SUSAN WEISBARTH.

152.  Plaintiff hereby incorporates paragraphs 1 through 27 above, as though fully set forth herein, at this place.

153.  As part of said Park Ventura Retirement Hotel's  duties as care custodian, of Thelma Stern, it had the duty to make sure that Thelma Stern was not the victim of unlawful conduct, including verbal assaults, by said RCFE's

SECOND AMENDED COMPLAINT

employees or to enter Thelma Stern's room other than to have a care giver take care of her or to clean or repair her room.   It also had a duty to respect Thelma Stern's wishes as to whether she desire d to live at, or move from, Park Ventura Retirement Hotel.  As managing agents, or Park Ventura Retirement Hotel, Steven Krivitsky, Tatyana  Krivitsy, and, Stephen Weisbarth  all had the duty to make sure that said Park Ventura Retirement Hotel's duties were met, not breached. On April 29, 2010, after being informed by Kenneth M. Stern, that Thelma Stern would be moving out of Park Ventura Retirement Hotel, the next day, Stephen Weisbarth left a telephonic message, stating that Thelma Stern should not move out of Park Ventura Retirement Hotel.  He referenced Thelma Stern as being an asset of, or to, Park Ventura Retirement Hotel, as if she were a piece of furniture. Thelma Stern's being an asset, to Park Ventura Retirement Hotel, was that she paid Park Ventura Retirement Hotel thousands of dollars a month, to live there. At this time Kenneth M. Stern had been Thelma Stern's son for about 58 years. Stephen Weisbarth was but a mere acquaintance of Thelma Stern.  Yet, Stephen Weisbarth took it upon himself to tell Kenneth M. Stern that Thelma Stern should not be move out of Park Ventura Retirement Hotel.  It was not Stephen

SECOND AMENDED COMPLAINT

122

Weisbarth's place to rendering an opinion on this subject.  This was also despite defendants named herein, and Stephen Weisbarth's failure to correct the problems of neglect, and abuse, of which Kenneth M. Stern had been complaining.

154.  A big point that Stephen Weisbarth has made, in various documents, including job applications, was his ability to maximize the number of residents at the RCFEs at which he worked.  As such, he would not want Thelma Stern to leave Park Ventura Retirement Hotel; because, it would decrease the residency and income to Park Ventura Retirement Hotel.

155.  It may also be that Stephen Weisbarth did not want Thelma Stern to leave Park Ventura Retirement Hotel, because, Stephen wanted to engage in sexual misconduct in front of, or towards Thelma Stern.  In Cristina Castro v. Stephen Weisbarth, Los Angeles Superior Court number BC532771, Ms. Castro, an employee at Emeritus, an RCFE at which Stephen Weisbarth was the Administrator (person officially in charge of the RCFE, pursuant to Department of Social Services oversight)  after leaving Park Ventura Retirement Hotel.  He allegedly engaged in sexual misconduct, as alleged in the previous Claim.  If these allegations are true, Stephen Weisbarth is a pervert who should never be allowed

SECOND AMENDED COMPLAINT

to be near elderly and disabled persons, including Thelma Stern.

156.   Stephen Weisbarth was aware that Thelma Stern suffered from severe short term memory loss.   As such, he knew that if he engaged in acts such as pretending to, or actually, masturbating in front of Thelma Stern, that she would likely not remember such.   As such, his motive for trying to keep Thelma Stern from moving, may well have been so he could engage in such sexual misconduct, directed towards Thelma Stern.

157.   On April 30, 2010 Stephen Weisbarth, on behalf of himself, Tatyana Krivitsky, Steven Krivitsky, Tuscan Retreat, Inc., the other defendants names in this Claim, intentionally intruded into Thelma Stern's room, where Thelma Stern and Kenneth M. Stern were having a private conversation, at Park Ventura Retirement Hotel, and Kenneth M. Stern was in the process of moving Thelma Stern, and her belongings out of Park Ventura Retirement Hotel, and intruded into Thelma Stern's, and Kenneth M. Stern, conversations, and intruded into the matter of Thelma Stern moving out of Park Ventura Retirement Hotel, in a manner highly offensive to a reasonable person.   In this regard Stephen Weisbarth, without invitation, entered into Thelma Stern's room (a) interfering with Thelma Stern's

SECOND AMENDED COMPLAINT

124

preparation to move out of Park Ventura Retirement Hotel, and screaming and yelling, in a maniacal rage, that she could not move out of Park Ventura Retirement Hotel.  Stephen Weisbarth's conduct was an outgrowth of the employment, engendered by the employment and had a causal nexus to the work, in that, it was his job to maximize the residency rate of an income, to Park Ventura Retirement Hotel.

158.  Thelma Stern was terrorized by Stephen Weisbarth's conduct, and was fearful and emotionally upset by such, requiring Thelma Stern to take Thelma Stern out of her room, and away from Stephen Weisbarth, to stop his terrorizing Thelma Stern.

159.  Stephen Weisbarth was asked by Kenneth M. Stern, approximately five times, to leave Thelma Stern's room.  Stephen Weisbarth refused to leave Thelma Stern's room.  Instead, he continued to yell at Thelma Stern, in a maniacal rage, that she could not move out of Park Ventura Retirement Hotel.  He would not leave.  Thelma Stern had to remove Thelma Stern, from her room, to get her away from Stephen Weisbarth.  Thelma Stern was harmed, in that, she was terrorized by Stephen Weisbarth's conduct, and suffered emotional distress, which

SECOND AMENDED COMPLAINT

was a substantial factor requiring Kenneth M. Stern  to take Thelma Stern out of her room, which she had the right to possess, without being terrorized by Stephen Weisbath, and away from Stephen Weisbarth, to stop his terrorizing Thelma Stern.

160.  As a manager of Park Ventura Retirement Hotel, which included, but was not limited to, the role of resident relations, Stephen Weisbarth's conduct is attributable to Tuscan Retreat, Inc., who is thus vicariously liable for Stephen Weisbarth's acts.

161.  Furthermore, defendants named in this Claim, including Tuscan Retreat, Inc., Steven Krivitsky, Tatyana Krivitsy, Susan Weisbarth and Stephen Weisbarth, had knowledge of all material facts concerning Stephen Weisbarth's conduct, alleged in this Claim, prior to institution of the lawsuit and are defending such acts.   Furthermore, Steven Krivitsky and Tatyana Krivitsky and Tuscan Retreat have stated there was no misconduct, because Stephen Weisbarth had a right to enter Thelma Stern's room.  Such denial of misconduct, intent to abide such act, and interposing a defense to the allegations, constituted ratification.

162.  As a result of defendants' oppressive and malicious conduct, as described in this Claim, plaintiff is entitled punitive and exemplary damages, in a

SECOND AMENDED COMPLAINT

sum to be determined by a jury.   This was oppressive conduct, in that, it was despicable conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, in that, plaintiff had a right to not have Stephen Weisbarth to come into plaintiff's room and terrorize her, in the manner alleged herein. It was also malicious conduct which is intended by defendants to cause injury to the plaintiff and  despicable conduct which is carried on by defendants with a willful and conscious disregard of the rights or safety of plaintiff, in that, plaintiff had a right to not have Stephen Weisbarth to come into plaintiff's room and terrorize her, in the manner alleged herein.

163.  Additionally, this constituted elder abuse pursuant to Welfare and Institutions Code section 15610.07, and Penal Code section 368 [c], as Thelma Stern is over 65 and the  disabilities being her Alzheimer's Disease and her being bed ridden, and confined to a wheelchair.

164.  As a result of defendants' conduct, herein, plaintiff is entitled to an award of attorneys fees.

165.  As a result of defendant's conduct, plaintiff is entitled to emotional distress damages.

SECOND AMENDED COMPLAINT

127

FOURTEENTH CLAIM FOR TRESPASS  AGAINST ALL DEFENDANTS, EXCEPTING SUSAN WEISBARTH.

166.  Plaintiff hereby incorporates paragraphs 1 through 27 and 153 through 165 above, as though fully set forth herein, at this place.

On said date, Stephen Weisbarth intentionally entered said room.  Thelma Stern had not given Stephen Weisbarth permission to enter said room.  Thelma Stern was nominally harmed.  Stephen Weisbarth's conduct was an outgrowth of the  employment, engendered by the employment and had a causal nexus to the work, in that, it was his job to maximize the residency rate of an income, to Park Ventura Retirement Hotel.

167.  Stephen Weisbarth's entry was an unauthorized entry, in that, Park Ventura Retirement Hotel employees were authorized to enter Thelma Stern's room only to provide her care giver services or to clean or repair her room.  This is confirmed in Thelma Stern's admission agreement (lease) with Tuscan Retreat, Inc. Stephen Weisbarth's entry, which was uninvited, was for neither.  It was to terrorize Thelma Stern, by screaming and yelling at her, that she could not move out of Park Ventura Retirement Hotel.  As a manager of Park Ventura Retirement Hotel, which included, but was not limited to, the role of resident relations,

SECOND AMENDED COMPLAINT

Stephen Weisbarth's conduct is attributable to Tuscan Retreat, Inc., who is thus
vicariously liable for Stephen Weisbarth's acts.

168.  As legal cause of defendants' conduct, plaintiff is entitled to nominal
damages.

169.  As a result of defendants' oppressive and malicious conduct, as
described in this Claim, plaintiff is entitled punitive and exemplary damages, in a
sum to be determined by a jury.   This was oppressive conduct, in that, it was
despicable conduct that subjected plaintiff  to cruel and unjust hardship in
conscious disregard of plaintiff's rights, in that, plaintiff had a right to not have
Stephen Weisbarth to come into plaintiff's room and terrorize her, in the manner
alleged herein. It was also malicious conduct which is intended by defendants to
cause injury to the plaintiff and  despicable conduct which is carried on by
defendants with a willful and conscious disregard of the rights or safety of
plaintiff, in that, plaintiff had a right to not have Stephen Weisbarth to come into
plaintiff's room and terrorize her, in the manner alleged herein.

**WHEREFORE, PLAINTIFFS PRAY FOR JUDGMENT** against
defendants, and each of them, as follows, according to the damage allegations

SECOND AMENDED COMPLAINT

pertaining to the negligence claim, herein, which include the following:

1.  For general damages according to proof;

2.  For special damages, according to proof;

3.  For statutory damages;

4.  For interest allowed by law;

5.  For punitive and exemplary damages, as is appropriate;

6  For costs of suit incurred herein;

7.  For attorney's fees; and,

8. For such other and further relief as the court may deem proper.

REQUEST FOR JURY TRIAL

Plaintiff hereby requests that this matter be tried to a jury.

Dated: January 7, 2015        LAW OFFICES KENNETH M. STERN

BY:_____/S_____
KENNETH M. STERN, ATTORNEY
FOR PLAINTIFF.

SECOND AMENDED COMPLAINT

130